367 P.2d 751 (1961)
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, State of Colorado; Raymond Ziegler, Chief Building Clerk of Jefferson County; Ira Hardin, Zoning Administrator of the County of Jefferson, Plaintiffs in Error,
v.
Jack G. SHAFFER, Walter Johnson, Ethel Johnson, Joseph R. King and Bessie N. King, Defendants in Error.
No. 19559.
Supreme Court of Colorado. En Banc.
December 26, 1961.
Rehearing Denied January 22, 1962.
*752 Ronald J. Hardesty and Edward N. Juhan, Denver, for plaintiff in error.
Holley & Boatwright, Wheat Ridge, David B. Richeson, Denver, for defendants in error.
DAY, Justice.
The parties are here in reverse order of their appearance in the trial court. We will refer to them as plaintiffs and defendants or by name.
This writ of error is directed to a judgment of the trial court setting aside the Jefferson County zoning resolution as to plaintiffs' property, and establishing by judicial decree the zoning to be in effect on the property.
Plaintiffs are the owners of three parcels of land in Jefferson County at or near the intersection of Wadsworth Blvd. and West 35th Ave. Several years ago, after extensive study and hearings, the County Commissioners of Jefferson County adopted an over-all plan for the development of the county, and pursuant to said plan prepared a map designating the zoning to be in effect in the various areas in the county. The zoning resolution affecting the property of the plaintiffs designated the area as Residential 2. The property on Wadsworth, including plaintiffs' property, is in the Residential 2 classification permitting single or double residential construction.
Plaintiffs Shaffer and Johnson brought one suit attacking the resolution; plaintiff King brought a separate suit. Both presenting questions of law and fact, the suits were consolidated.
The complaints allege that application was made to the County Commissioners for change in the zoning classification and that such applications were denied. The complaints contain the usual allegations that the subject properties are unsuitable for residential use and that they are suitable only for commercial use; that the zoning resolution as to them is confiscatory, discriminatory, unreasonable, and, therefore, unconstitutional and is violative of the equal protection and due process provisions of the Federal and State constitutions.
After trial to the court judgment was entered in favor of the plaintiffs and against the county. With respect to the Johnson property, the court set aside the R-2 zoning and enjoined the county from interfering with any use permitted by Residential-Commercial classification. Injunctive relief was denied Shaffer, and because of the effect on the adjoining residents, the court "suggested" that 95 feet of his property be withdrawn from the suit, which Shaffer did. The court then decreed that Shaffer could petition the Board of Adjustment for a variance and directed that the board "can permit" the property to be used for "some better use than purely residential". The court further decreed that the permit be "for a commercial use with certain restrictions *753 thereon which will protect the residential neighborhood which lies to the east thereof". The effect of Shaffer's decree was to leave 95 feet of the property zoned as residential and the balance with a classification not readily identifiable under the zoning regulations. The King decree established a Residential-Commercial 1 classification for the King property with an injunction restraining the county officials from interfering with the use of the property for a medical clinic building. The result of the three decrees is to establish on this corner four different zoning classifications.
It is contended that the court erred as follows:
1. By invading the legislative field and usurping the function of the county commissioners in itself declaring the zoning classification for each of the parcels.
2. In decreeing a zoning classification for each parcel of land of each of the plaintiffs different from that of any of the others.
3. In creating spot zoning in the area.
The county also contends that the evidence falls short of the quantum of proof required before a zoning resolution can be declared unconstitutional; that the validity of zoning classifications should be upheld where the wisdom thereof is fairly debatable.
The facts in this case are in many particulars similar to the conditions prevailing in Baum v. City and County of Denver, 147 Colo. ___, 363 P.2d 688, and the holding in that case is controlling here. However, in the instant action there are several facets not present in the Baum case which make out a case more strongly in favor of the zoning as established by the county commissioners. The error of the trial court in setting aside the zoning resolution and in attempting to decree judicially another and different zoning resolution will be discussed as we take up the points upon which the judgment is challenged.
The legislative history involved in the enactment of the zoning resolution shows that Jefferson County enacted the first comprehensive zoning resolution following a land use study in 1941. In 1945 the County Planning Commission, in cooperation with the Tri-County Planning Commission, worked more than eighteen months on a zoning study and planning. As a result the Board of County Commissioners adopted a revised zoning resolution and maps in 1946. Zoning generally and specifically was revised in 1953 and again in 1956. In 1957 the county engaged a planning director to supervise and direct the drafting of a master plan. In May, 1958, the present zoning resolution, including revisions subsequent to 1956, was adopted.
During all of this time the owners of the property involved had opportunity to present their views as to classification of their land. The testimony shows that much of the land surrounding the sites owned by the plaintiffs in this case is undeveloped or devoted to gardening or nursery activity, and that landowners are sitting back awaiting the trend of development. It was established at the trial that plaintiffs were not able to obtain the consent of other landowners to join in the request for re-zoning, hence the two actions were filed to re-zone the specific land of plaintiffs and not that of others either on Wadsworth or in the other residentially zoned areas. Out of the entire area which extends from the Denver county line on Sheridan Blvd. west of Wadsworth to Kipling, and roughly from West 32nd Ave. to West 44th Ave., the land involved in this application for a zone change consists of the Shaffer plot of 193 ft. fronting on Wadsworth, with a depth of 183 ft. on West 35th Ave. and the Johnson property at the southwest corner of the intersection with 163 ft. frontage on Wadsworth. The King property adjacent to the Johnson property has a frontage of 125 ft. on Wadsworth. East of the Shaffer property on West 35th Ave., for a period of six blocks, are many moderately priced to expensive single family dwellings in the cost range from $17,000.00 to $25,000.00, all built in reliance upon the R-2 zoning classification. These owners appeared and testified *754 to the depreciating effect plaintiffs' rezoning request would have on their property. It was this testimony which prompted the withdrawal of the easterly 95 ft. of the Shaffer property from the requested rezoning as a buffer zone. Also it was the presence of these expensive residences that caused the court to "order" permission of some use which would still be so restricted as to protect these residences.
One of the factors in the case was the recent reconstruction and redesigning of Wadsworth. It is now six lanes with a median strip, and it carries a considerable volume of traffic. The county commissioners, in their findings denying the application for re-zoning, assume the position that the change in the design of Wadsworth Blvd. makes it more imperative that the zoning along Wadsworth not be disturbed. The commissioners' position was supported at the trial by opinion evidence of the experts that it was definitely the part of good community planning to prevent strip zoning along Wadsworth so that it would not become another West Colfax or a duplication of West 38th Ave. and West 44th Ave. The expert testified that the property presently developed as commercial in the areas known as Lakewood and Wheatridge, plus the property set aside in the over-all plan for future commercial development, was more than ample to take care of the commercial needs of the residents of the entire area, and that to designate additional property such as plaintiffs' and others along Wadsworth would not only create an imbalance of the commercial to residential property but would create considerable traffic problems on Wadsworth. It was shown that Wadsworth Blvd. was designed to carry a large volume of traffic swiftly from one county to another and that a filling station such as proposed by Shaffer and other commercial enterprises would entail curb cuts and would promote the entry and exit of heavy traffic from and to the commercial enterprises on the boulevard and thus destroy the usefulness of the boulevard for carrying the traffic. In addition, cars entering and leaving the boulevard from such establishments would create considerable traffic hazard.
The increased flow of traffic as a result of redesigning Wadsworth and the disparity of value between the property for commercial use and its value for residential purposes, were two of the principal grounds relied upon by plaintiffs. Both contentions were answered in the Baum case. Therein we discussed in considerable detail, citing three Colorado cases, among others, the question of the validity of the argument that the property was more valuable for commercial than for residential use. From Illinois, where the Supreme Court has decided cases which have taken their place among the authoritative pronouncements on zoning problems in the nation, we find the rule that heavy traffic on an adjoining street is insufficient to establish the unreasonableness of residential classification. See La Salle National Bank v. City of Chicago, 6 Ill.2d 22, 126 N.E.2d 643; Herzog Building Corporation v. City of Des Plaines, 3 Ill.2d 206, 119 N.E.2d 732; Kinney v. City of Joliet, 411 Ill. 289, 103 N.E.2d 473, and Mundelein Estates, Inc. v. Village of Mundelein, 409 Ill. 291, 99 N.E.2d 144. See also People ex rel. Alco Deree Co. v. City of Chicago, 2 Ill.2d 350, 118 N.E.2d 20; Miller Brothers Lumber Co. v. City of Chicago, 414 Ill. 162, 111 N.E.2d 149; Dunlap v. City of Woodstock, 405 Ill. 410, 91 N.E.2d 434, wherein the Illinois court held the fact that property would be more valuable for a service station (a use contemplated by one of the plaintiffs here) is not sufficient reason to upset a zoning ordinance establishing property as residential.
The finding of the trial court that plaintiffs' property is not suited for residential use and that the application of present zoning would be confiscatory, is not supported by the record. Suitability for residential use was demonstrated by the nature and number of residences in the immediate area although some of these properties do not front on Wadsworth. Suitability for residential use was established by the fact that on plaintiff Johnson's property there *755 are and have been for years two residences, one a double and one a single family structure. Both are occupied and rentals thereof have been steady over the past six years. Also there are two other residential units on the nearby Johnson property not included in the tract sought to be re-zoned. These units are also rented and have been continuously occupied for more than six years. There is a residence which has been occupied for many years on the Shaffer property, a single family residence. Of the three plaintiffs, only King has vacant and unimproved property. There was some testimony that the vacant portions of plaintiffs' property would be suitable for single or multiple family dwellings.
We again call attention to the danger of the judiciary invading the legislative field (see Nelson v. Farr, 143 Colo. 423, 354 P.2d 163) and reiterate the hazard of "spot zoning" property by decreeing specific and different zoning for different pieces of property as treated in the Baum case. Also see the recent case of Clark v. City of Boulder, 146 Colo. ___, 362 P.2d 160, for a discussion of the vices of spot zoning.
The Baum case quoted quite extensively from Robinson v. City of Bloomfield Hills, 350 Mich. 425, 86 N.W.2d 166. Some of the language of that case we paraphrase here to demonstrate the folly of substituting judicial judgment for that of a zoning authority. When we interpose by judicial writ or command that a certain tract on Wadsworth Blvd. be turned over to commercial pursuits, the owners of the tract across the street are before us for similar disposition the next day, and the area north and south the day after. Thus the judiciary assumes the zoning function. The argument of the petitioners is cogent and not difficult to follow: What is sauce for the goose is sauce for the gander. And so it goes. Some where one zone must end and another start. It is the province of the zoning body to draw the line of demarcation as to the use and purpose to which property should be assigned or placed, and it is neither the province nor the duty of courts to interfere with the discretion with which such bodies are vested except where there is a clear showing of an abuse of that discretion. There is no abuse of discretion where the question is merely debatable.
The judgment is reversed and the cause remanded with directions to dismiss the actions.
MOORE and PRINGLE, JJ., not participating.