No. 19,963.

GERTRUDE BARBARA LEVY *v*. THE BOARD OF ADJUSTMENT
OF ARAPAHOE COUNTY.
(369 P. [2d] 991)

Decided March 19, 1962. Rehearing denied April 9, 1962.

Messrs. CRANSTON & ARTHUR, for plaintiff in error.

Mr. RICHARD D. DITTEMORE, for defendant in error.

494

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

On March 9, 1961, The Board of Adjustment of Arapahoe County (hereafter referred to as The Board) denied Levy's request that she be granted a variance from the existing zoning laws and regulations to the end that she be permitted to build a single family residence on a plot of ground referred to as the east one-half of Plot 14 in Charlou Park, Third Filing, situate in Arapahoe County, Colorado, this plot consisting of one and one-quarter acres. Thereafter she filed a certiorari-type action in the district court, seeking an order that the Board be directed to grant her request for a variance. Upon trial the court dismissed Levy's complaint and entered judgment for the Board, which judgment Levy by writ of error seeks to reverse.

The following chronology of facts and events is deemed necessary to a full understanding of the present controversy:

1. Plot 14 in Charlou Park, Third Filing, Arapahoe County contains two and one-half acres, and is bounded on the west, south and east by public streets, and on the north by Plot 13;

2. On February 1, 1956, Carlile and Pease by warranty deed conveyed to one Newman Plot 13, Charlou Park, Third Filing, said Plot also consisting of two and one-half acres;

3. Prior to November 12, 1957, said Charlou Park, Third Filing was zoned "A-2," which required among other things, that a single family residence be erected on a plot consisting of no less than two and one-half acres;

4. On November 12, 1957, the Board of County Commissioners for Arapahoe County changed the zoning for Charlou Park, Third Filing from "A-2" to "R," which

reduced the minimum area requirement from two and one-half acres to one acre;

5. This change in zoning was challenged in the district court, which on May 28, 1958, upheld the change in zoning for Charlou Park, Third Filing from "A-2" to "R";

6. As of June 30, 1958, Carlile and Pease owned Plot 14 in said Charlou Park, Third Filing, and on that date by warranty deed conveyed to Peter Lahana and Viola Lahana the west one-half of said Plot 14;

7. On August 14, 1958, a notice of lis pendens was filed and recorded in the office of the Clerk and Recorder for Arapahoe County, said notice stating that a writ of error had theretofore issued from the Supreme Court, seeking reversal of the judgment entered on May 28, 1958;

8. On September 12, 1958, Carlile and Pease by warranty deed conveyed to Donald H. Oakes and Shirley L. Oakes the east one-half of said Plot 14;

9. On July 27, 1959, this Court reversed the judgment theretofore entered by the district court of Arapahoe County on May 28, 1958, and in so doing it was held that the attempted rezoning of Charlou Park, Third Filing from "A-2" to "R" was invalid and a nullity. See *Holly Development Co. Inc. v. Board of County Commissioners of Arapahoe County,* 140 Colo. 95, 342 P. (2d) 1032;

10. On October 20, 1959, the Board of County Commissioners acting pursuant to the mandate of this Court vacated its rezoning order of November 12, 1957;

11. On December 16, 1959, Donald H. Oakes and Shirley L. Oakes by warranty deed conveyed the east one-half of said Plot 14 to Levy;

12. On September 15, 1960, the Board granted a variance to the Lahanas, permitting them to build a single family residence on the west one-half of said Plot 14, on the grounds that inasmuch as the Lahanas purchased this land prior to the time the lis pendens was filed, theirs was a "hardship" case which justified the granting of the variance;

13. On March 9, 1961, the Board denied Levy's request

for a variance to permit her to also build a single family residence on the east one-half of said Plot 14, on the grounds that since she acquired her land long subsequent to the filing of the lis pendens, hers was *not* a "hardship" case, and a variance should not be permitted.

At the hearing before the Board, Levy called as her witness one Black, a realtor and real estate appraiser, who testified that the "highest and best" use for the east one-half of said Plot 14 is for the erection of a single family residence, and that the construction of such a building on only one and one-half acres would not depreciate the value of nearby properties, but would in fact enhance their value. It was also brought out in the hearing before the Board that Levy had an offer from the Lahanas to purchase her property, but for reasons which are not a matter of record she refused the offer.

■ The power of the Board in regard to the granting of requests for variances from existing zoning regulations is spelled out in C.R.S. '53, 106-2-17, which provides, in part, as follows:

"Upon appeals the board of adjustment shall have the following powers:

\* \* \*

"(2) To hear and decide, in accordance with the provisions of any such resolution, requests for special exceptions or for interpretation of the map or for decisions upon special questions upon which such board is authorized by any such resolution to pass.

"(3) Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property *at the time of the enactment of the regulation,* or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under this act would result in peculiar and exceptional practical difficulties to, or *exceptional* and *undue hardship* upon, the owner of such property to authorize, upon an appeal relating to said property, a variance

from such strict application so as to relieve such difficulties or hardship, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning resolutions." (Emphasis supplied.)

As was mentioned above, the Board denied Levy's request for a variance on the ground that Levy's hardship, if any, was "self-inflicted," in that she purchased the subject property consisting of only one and one-quarter acres, with either actual or constructive notice that existing zoning regulations required that a single family residence be built on no less than two and one-half acres.

It is Levy's contention that in denying her request for a variance the Board acted arbitrarily, capriciously and in excess of its authority and that the net effect of their actions was to deprive her of her property in violation of both the Colorado and U.S. Constitutions.

 In Yockley, Zoning Law and Practice, Second Edition, vol. 1, page 479 it is said:

"The law recognizes that there is a presumption that administrative boards, such as a zoning board, will act fairly and with proper motives and upon valid reasons upon an application for a change in the use of premises or in connection with the granting of a variance.

"It is encouraging to find that the principle that the courts will not interfere with the discretion exercised by boards of adjustment, unless the actions of the board are arbitrary or capricious, is being applied with ever increasing frequency.

"However, the presumption of fairness and correctness will fall and if favorable to a variance, the same will be set aside where there is a clear abuse of discretion by the board.

"It is a well settled proposition of zoning law that a court will not substitute its judgment for the judgment of the board. The court may not feel that the decision

of the board was the best that could have been rendered under the circumstances. It may thoroughly disagree with the reasoning by which the board reached its decision. It may feel that the decision of the board was a substandard piece of logic and thinking. None the less, the court will not set aside the board's view of the matter just to inject its own ideas into the picture of things . . ."

"The rule is excellently stated in Hannigan v. Murdock, 47 N.Y.S. 2d 855, wherein the court stated that where there is power in a zoning ordinance to grant a variance and there is an absence of corruption, caprice and unreason, the court, although conscious that the exercise of discretion was not up to the usual good standard, must bow to the determination of the administrative branch of the government. In this case the court held that it must not trespass upon the administrative work of the board of standards and appeals under a zoning ordinance, but must confine review to the correction of legal errors."

Similarly, in *Bacon v. Steigman*, 123 Colo. 62, 255 P. (2d) 1046, it was said:

"Plaintiffs invoked the jurisdiction of the Board of Adjustment, and on final hearing suffered adverse decision. Under such circumstances, we have said: 'That determination, subject only to inquiry by the board as to whether, the record considered, the board has abused its discretion, was final.' "

Applying the test laid down in the *Bacon* case to the instant controversy, the determination of the Board that Levy's request for a variance should be denied is final, unless we find that "the record considered, the board has abused its discretion." In holding that this was not truly a "hardship case," the Board noted that Levy purchased this property not only long after the filing of the lis pendens, but even subsequent to the decision in the *Holly Development Co. Inc.* case. It was there held that the Board of County Commissioners, in changing the zoning classification of Charlou Park, Third Filing from "A-2" to "R", acted "arbitrarily, capriciously and exceeded its

jurisdiction," and the judgment entered by the trial court was reversed with directions to order the Board of County Commissioners "to vacate, set aside and hold for naught its order of November 12, 1957" purporting to rezone said Charlou Park, Third Filing.

Some courts adhere to the rule that a so-called "self-inflicted hardship" is an absolute bar to the granting of a variance. So, in *Sherwood Realty Corporation v. Feriola,* 82 N.Y.S. (2d) 505 it was said: "The Board should also keep before it the established rule that self-inflicted hardship, deliberately or ignorantly incurred, affords no basis for special treatment under zoning regulations." And, in a like vein, it was stated in *Kovacs v. Board of Adjustment of Ross Township,* 173 Pa. Super 66, 95 A. (2d) 350: "It is, of course, clear that the legislature never intended that a landowner could create his own 'unnecessary hardship' and then rely upon it to secure a variance." Under this rule Levy would be absolutely barred from obtaining a variance because, when she acquired the subject property, she knew or should have known that under the existing zoning regulations she could not build a single family residence on a plot consisting of only one and one-quarter acres, and such a building could be lawfully erected only on a plot consisting of at least two and one-half acres.

Other jurisdictions hold, however, that even though one purchases property with full knowledge that the then existing zoning laws preclude him from using the same in the manner which he subsequently proposes in a request for a variance, such is not in and of itself an absolute bar to the granting of the request for a variance, though it is still a most significant fact properly to be considered by the board of adjustment in exercising its discretionary power.

In *Kryscnski v. Shenkin,* 53 N.J. Super, 590, 148 A. (2d) 58 a case strongly relied upon by Levy, the New Jersey Supreme Court in directing that a local board of adjustment grant a requested variance stated: "This is not a

case of a variance sought by purchasers after they have bought a lot with full knowledge of the zoning ordinance restriction, in which case other considerations might apply."

In *Ardolino v. Florham Park Board of Adjustment,* 24 N.J. 94, 130 A. (2d) 847, Vanderbilt, C. J. speaking for the Supreme Court of New Jersey, declared:

"In the evaluation of a claim of undue hardship, the purchase of land after the adoption of an ordinance prescribing a greater requirement than can be complied with is a circumstance to be considered . . . It is not conclusive by any means, but it is unquestionably a material element bearing on the issue, . . . and weighs heavily against the plaintiff's claim . . . There are circumstances that we can conceive of in which a purchaser from Thompson Associates, Inc., should not be entitled 'incontestably' to a variance and that it would be beyond the intention of the statute to grant it. The cases arising must be considered each on their own facts as they arise *without any rights of prior owners tacked on.* If this were not the case, the spirit of zoning which is to limit departure from the literal requirements of zoning ordinances would be quickly thwarted, for the accumulation of such rights would tend to call for variance far beyond the point where for the public good and welfare they should have ended. We therefore think it is a better rule, as we have said, that each case be considered for itself in the search for the necessary undue hardship." (Emphasis supplied.)

So, Levy in her attempt to show undue hardship must stand or fall on her own factual predicament, and she cannot bolster her position by laying claim to any of the alleged rights of her predecessors in title. In this connection Levy apparently feels that her position is materially strengthened if she is able to step into the shoes of her immediate predecessors in title. Actually her immediate predecessors in title, Donald H. Oakes and Shirley L. Oakes, are in no more favorable position than

she, since they too acquired title after the notice of lis pendens was a matter of public record.

■ Without deciding whether "self-inflicted hardship" is in and of itself an absolute bar to the granting of a variance, it is at the very least a highly significant fact which, according to the *Ardolino* case, is a "material element bearing on the issue and weighs heavily against the owner seeking the variance." Where, as here, the Board of Adjustment has determined that such fact is sufficient reason to deny the request for a variance, such determination should be upheld on review as a reasonable exercise of a discretionary power.

It is additonally argued by Levy, that hardship or not, she has an inalienable right protected by both the Colorado and United States Constitutions to build a single family residence on the east one-half of said Plot 14, and that any zoning regulation which would purport to thwart her in this regard is unconstitutional.

■ Similar arguments by property owners seeking to use their property as they see fit without regard to zoning regulation have frequently been made, and generally rejected. Reasonable zoning regulations have long been held to be a valid exercise of the police power. See, only by way of example, *Village of Euclid v. Ambler Realty Company,* 272 U.S. 365; *Baum v. City and County of Denver,* 147 Colo. 104, 363 P. (2d) 688; and *The Board of County Commissioners v. Shaffer,* 149 Colo. 18, 367 P. (2d) 751.

We conclude that the zoning of said Charlou Park, Third Filing as "A-2" was a reasonable exercise of the police power, a matter which was actually resolved in *Holly Development Co. Inc.,* supra.

The judgment is affirmed.

Mr. Justice Moore not participating.