Leon D. Lazer, J.
In this proceeding against the Town Board of the Town of Islip and the director of its building department, the ultimate relief sought by petitioner is permission to construct a one-family dwelling on her oceanfront property at Fair Harbor on Fire Island. Her 80 by 80-foot parcel lies in the oceanfront dune district AAAB (Islip Code, art VA) and was acquired under a contract conditioned upon her obtaining the requisite approvals to build a single-family *361 dwelling upon it. After she obtained a moratorium permit from the State Environmental Conservation Department, approval of waste disposal facilities from the county health department and a building permit from the town building department, petitioner closed title and commenced construction of the dwelling. The building department then revoked the building permit on the ground that it had been issued without the town board approval required for such construction in the oceanfront dune district under section 68-59.3 of the Islip Code.
The oceanfront dune district ordinance provides in pertinent part: "§ 68-59.1. Permitted uses. No structure shall be erected or used or occupied except as stair, lookout platform or fence designed to hold or increase the dune. The purpose of this restriction is to preserve the ecology of the dunes and grasses and to safeguard life and property on the barrier beach known as 'Fire Island.’ ” Section 68-59.3 empowers the town board to issue a special permit in the event "any owner of real property shall be unable to build upon his property because of the requirements of the Oceanfront Dune District.” The special permit procedure entails an application to the planning board, the recommendation of that body to be followed by a public hearing by the town board "to approve the proposals of the Planning Board” or to approve with or without conditions one of the alternatives offered by the applicant or a combination of "any of the above.” The town board is required to state in writing its reasons "for the approval or for the conditions imposed” and its decision is declared to be reviewable in a CPLR article 78 proceeding. The ordinance contains no standards to guide either board in making the necessary determinations. Finally, subsection B of section 68-59.3 provides:
"B. In the event a court of competent jurisdiction shall find that, unless the application is granted in one (1) of the forms proposed by the applicant, the final decision of the Town Board constitutes a taking, the Town Board may, within a time specified by the court, elect to:
"(1) Institute condemnation proceedings to acquire the applicant’s land in fee by purchase at fair market value.
"(2) Approve the application with such lesser restrictions and conditions as may be imposed by the court.
"(3) Approve the application as presented to the Town Board.”
The instant ordinance is distinctly similar to subdivision 6 of *362 section 24-0705 of the Environmental Conservation Law (the Freshwater Wetlands Act) which provides that if a court finds that the action taken with respect to an application for a permit constitutes a taking without just compensation the court may, at the election of the Commissioner of Environmental Conservation, set aside the order or require him to condemn the property.
When petitioner’s building permit was revoked, she applied to the planning board for a special permit but that body recommended that the application be denied because construction of dwellings was not permitted in the district and because "no construction should occur in the dune district until completion of the [National] Seashore Master Plan.” After a public hearing, the town board denied the application because "the erection of a house within the dune district shall bring irreparable harm to the primary dune and, therefore, endanger not only the house to be erected, but also those residences both adjacent to and to the north of the proposed residence.”
In this proceeding, petitioner has combined in a single petition requests for certiorari relief under CPLR article 78 directing that her application be granted; or, in the alternative, a declaratory judgment declaring the ordinance involved to be unconstitutional or unconstitutional as it affects petitioner’s property and directing the issuance of a building permit; or a judgment declaring that the board and the building department be estopped from canceling the building permit previously issued to her. A neighboring property owner has intervened in the proceeding and contends (orally and by letter) that petitioner is not entitled to relief, the hardship having been self-inflicted when she purchased with knowledge of the building prohibition. Intervenor further argues that, if this view is rejected, the town board must be ordered to condemn the property rather than issue a permit in view of its prior determination concerning irreparable harm and danger.
Certiorari Relief Under CPLR Article 78
The approval or denial of a special permit is deemed an administrative function to the extent that such action, even when taken by a legislative body, is subject to review in a CPLR article 78 proceeding (Mobil Oil Corp. v City of Syra *363 cuse, 52 AD2d 731). Where the legislative body has reserved the power to grant or deny special permits, it need not articulate standards which would guide or limit its exercise of such power (Matter of Green Point Sav. Bank v Board of Zoning Appeals, 281 NY 534; Matter of Larkin Co. v Schwab, 242 NY 330). Nevertheless, relief in the form of an order in certiorari is not available to the petitioner. In the absence of statutory standards to guide its action on a special permit, the power of a town board is not unlimited and its decision must be based upon findings which disclose the basis for its action (Matter of T.J.R. Enterprises v Town Bd., 50 AD2d 836; Matter of Dun Roamin Corp. v Larkin, 11 AD2d 737) and which are supported by substantial evidence (Matter of Adams Holding Corp. v Spitz, 17 AD2d 853). The instant record is devoid of any findings to support the town board’s conclusion concerning irreparable harm and damage. Thus, relief under CPLR article 78 would necessarily be limited to a remand for further findings (see Matter of Kadish v Simpson, 55 AD2d 911; Matter of Greenburgh Shopping Center v Town of Greenburgh, 21 AD2d 692), an unnecessary course here in view of the availability of a declaratory judgment remedy.
Declaratory Judgment Relief
The constitutional issue is cognizable in the instant proceeding because it is .no longer the rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality (Matter of Kovarsky v Housing Dev. Admin., 31 NY2d 184). Neither is the form of the action dispositive (see CPLR 103). The court may treat a CPLR article 78 proceeding as an action for declaratory judgment (see, e.g., Matter of Hoffman v Poston, 49 AD2d 316) or vice versa (see Board of Educ. v Allen, 25 AD2d 659) and special proceedings and actins may be consolidated (Matter of Elias v Artistic Paper Box Co., 29 AD2d 118). The intervenor’s contention that petitioner is not entitled to relief because she purchased the property with notice of the building prohibition is meritless. Such notice does not bar an owner from testing the validity of an ordinance as it applies to her property (Vernon Park Realty v City of Mount Vernon, 307 NY 493). The instant question is whether the ordinance, as applied, meets constitutional muster or whether, as petitioner asserts, it constitutes a "taking.”
*364 Environmental Protection and Property Rights — The Coming Collision
Zoning is an aspect of the police power asserted for the general welfare (Dowsey v Village of Kensington, 257 NY 221). The fundamental difference between an exercise of the police power and eminent domain is that the State takes property by eminent domain because it is useful to the public and under the police power because it is harmful; the former recognizes a right to compensation while the latter on principle does not (see Freund, The Police Power, § 511 [1904], pp 546-547). "Where government acts in its enterprise capacity, as where it takes land to widen a road, there is a compensable taking. Where government acts in its arbitral capacity, as where it legislates zoning or provides the machinery to enjoin noxious use, there is simply noncompensable regulation.” (Lutheran Church in Amer. v City of New York, 35 NY2d 121, 129.)
This basic dichotomy has become the basis for the upholding of severe land use restricitons enacted for environmental protection purposes in some jurisdictions. In Just v Marinette County (56 Wis 2d 7) the validity of a county wetlands ordinance adopted pursuant to shoreland regulations enacted by the State was upheld by the Wisconsin Supreme Court against a challenge by property owners who alleged that the restrictions constituted a taking without compensation. The case, the court declared, "causes us to re-examine the concepts of public benefit in contrast to public harm and the scope of an owner’s rights to use his property. In the instant case we have a restriciton on the use of a citizens’ property, not to secure a benefit for the public, but to prevent a harm from the change of the natural character of the citizens’ property”. (Just v Marinette County, supra, p 16.) "The ordinance,” it was concluded, "does not create or improve the public condition but only preserves nature from the dispoilage and harm resulting from the unrestricted activities of humans.” (Just v Marinette County, supra, p 24; see, also, Consolidated Rock Prods. Co. v City of Los Angeles, 57 Cal 2d 515, app dsmd for want of substantial Federal question 371 US 36; Potomac Sand & Gravel Co. v Governor of Md., 266 Md 358; Turnpike Realty Co. v Town of Dedham, 362 Mass 221, cert den 409 US 1108.)
In this State, the ultimate and dispositive confrontation between environmental legislation and property rights has not *365 reached the Court of Appeals in a modern context although the Tidal Wetlands Act (ECL art 25) is a potential arena for such a determination. While the prohibitory regulations of the Commissioner of Environmental Conservation have not yet taken effect (see ECL 25-0201, 25-0302), the constitutionality of the moratorium permit provisions (ECL 25-0202) is the subject of current litigation (see Matter of Russo v New York State Dept. of Environmental Conservation, 55 AD2d 935).
The most recent significant pronouncement of the Court of Appeals relative to the exercise of the police power to regulate the use of private property is to be found in French Investing Co. v City of New York (39 NY2d 587, app dismd 429 US 990, 97 S Ct 515; see, also, Matter of Charles v Diamond, 41 NY2d 318), where the issue was not environmental legislation per se but the efforts of the City of New York to preserve open space via a zoning amendment which classified certain private parks as a special park district and in return gave the owner transferable development rights. In French Investing Co. v City of New York (supra) the court eschewed the metaphorical use of the language of eminent domain (e.g., "taking” and "confiscatory”) upon the ground that the gravamen of a constitutional challenge to a regulatory measure is that it is an invalid exercise of the police power under the due process clause. Reaffirming the traditional doctrine enunciated in Pennsylvania Coal Co. v Mahon (260 US 393) and elaborated in Goldblatt v Town of Hempstead (369 US 590) the court analyzed the constitutional issue as follows (39 NY2d 587, 596):
"What is an 'unreasonable’ exercise" of the police power depends upon the relevant converging factors. Hence, the facts of each case must be evaluated in order to determine the private and social balance of convenience before the exercise of the power may be condemned as unreasonable [citations omitted].
"A zoning ordinance is unreasonable, under traditional police power and due process analysis, if it encroaches on the exercise of private property rights without substantial relation to a legitimate governmental purpose. A legitimate governmental purpose is, of course, one which furthers the public health, safety morals or general welfare. [Citations omitted.] Moreover, a zoning ordinance, on similar police power analysis, is unreasonable if it is arbitrary, that is, if there is no reasonable relation between the end sought to be achieved by *366 the regulation and the means used to achieve that end [citations omitted],
"Finally, and it is at this point that the confusion between the police power and the exercise of eminent domain most often occurs, a zoning ordinance is unreasonable if it frustrates the owner in the use of his property, that is, if it renders the property unsuitable for any reasonable income productive or other private use for which it is adapted and thus destroys its economic value, or all but a bare residue of its value [citations omitted].”
This approach places the ultimate emphasis on the rights of the property owner (see 1 Rathkopf, Law of Zoning and Planning [4th ed], § 7.03, p 7-31) despite the fact that the test is characterized by the court in terms of a "balance of convenience.” It has in the. past been adhered to in this State not only where, as in French Investing Co. (supra), itself, the purpose of the restriction was clearly to provide a public "benefit” (see, also, Lutheran Church in Amer. v City of New York, supra [landmark preservation]; Vernon Park Realty v City of Mount Vernon, supra [land use restricted to parking lot]), but also in those cases where the restriction arguably prevented a public "injury” (see, e.g., Salamar Bldrs. Corp. v Tuttle, 29 NY2d 221, [pollution control]; Harbor Farms v Nassau County Planning Comm., 40 AD2d 517 [pollution control]; King v Incorporated Vil. of Ocean Beach, 207 Misc 100, affd 286 App Div 850 [protection of beach and dune area]; see, also, Goldblatt v Town of Hempstead, supra; Pennsylvania Coal Co. v Mahon, supra). In Lutheran Church the court cited with approval a 1963 decision of the New Jersey Supreme Court (Morris County Land Inv. Co. v Parsippany-Troy Hills Twp., 40 NJ 539) which invalidated a flood basin zoning ordinance as a taking of private property without compensation.
Although in French Investing Co. (and Lutheran Church) the Court of Appeals recognized that a police power regulation to prevent public harm is not compensable, it reiterated the traditional position that when such a regulation deprives the owner of the use of his land, it "amounts to a deprivation or frustration of property rights without due process of law and is therefore invalid” (39 NY2d at p 594). Thus it appears that at this point in New York’s juridical history, the balance remains in favor of private property rights and therefore the instant case must be decided in accordance with the tradi *367 tional precepts which are the foundation of that balance (see, e.g., Vernon Park Realty v City of Mount Vernon, supra; Shepard v Village of Skaneateles, 300 NY 115; Arverne Bay Constr. Co. v Thatcher, 278 NY 222; Matter of Eaton v Sweeny, 257 NY 176).
Petitioner’s Right to Relief
Under the traditional rule, the first inquiry relates to the reasonableness of the Islip ordinance which contains the following statement of purpose: "The purpose of this restriction is to preserve the ecology of the dunes and grasses and to safeguard life and property on the barrier beach known as 'Fire Island’ ” (§ 68-59.1).
Judicial notice must be taken of the fragility of the ecology of Fire Island, including the dunes, and thus the fact that the ordinance is barren of legislative findings is not fatal to its validity as a police power regulation (see Lighthouse Shores v Town of Islip, 41 NY2d 7). In Lighthouse Shores it was established that vehicular traffic on Fire Island was destructive of the ecology and therefore it is obvious that building construction is equally or more injurious.
Once it is demonstrated that a restriction serves some legitimate public purpose, the property owner, in order to sustain an attack on constitutional grounds, must establish that the resulting hardship is such as to deprive him of any use of the property to which it is reasonably adapted or destroys the greater part of its value (Salamar Bldrs. Corp. v Tuttle, supra). A restriction is invalid if it frustrates the owner in the use of his property (French Investing Co., supra) or deprives him of any reasonable use to which any owner would be entitled to put the property (Charles v Diamond, supra). In the case at bar the property at issue was purchased for the purpose of construction of a dwelling, such construction has been commenced, and it has not been shown that the land is not suitable for that purpose. The legislative restriction on the use of the land, however, limits construction to "a stair, lookout platform or fence.” Such a restriction deprives the petitioner of any reasonable use of the property to which it is reasonably adapted and must be deemed unreasonable and a violation of the due process clause. Under the police power analysis found in the older New York cases it might have been characterized as "confiscatory” and a "taking without compensation” (see, e.g., Arverne Bay Constr. Co. v *368 Thatcher, supra; Eaton v Sweeny, supra), but to do so is to confuse the metaphor with reality. Absent factors of governmental displacement of private ownership, occupation or management, there is no "taking” within the meaning of constitutional limitations and no right to compensation as for a taking in eminent domain (French Investing Co., supra). Petitioner is entitled to a declaration that the ordinance as applied to her property is an invalid exercise of the police power under the due process clauses of the State and Federal Constitutions. Under the terms of the ordinance, nevertheless, a declaration of invalidity, even though cast in terms of a "taking” in the legislation, sets in motion 68-59.3B pursuant to which the town board may either institute condemnation proceedings or approve the application.
In light of this determination, it is unnecessary to reach the estoppel issue.
Settle judgment declaring the invalidity of section 68-59.1 of the Islip Code as applicable to petitioner’s property and providing for the further steps available to the town board.