COTTONWOOD FARMS, a Colorado partnership, and Colorado Rock Company, a Colorado corporation, Petitioners,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, Colorado, and the State of Colorado, Respondents.

No. 86SC218.

Supreme Court of Colorado, En Banc.

Oct. 31, 1988.

Hutchinson, Black, Hill & Cook, David G. Hill, David M. Packard, James England, Boulder, for petitioners.

Patrick R. Mahan, County Atty., Gay B. Ummel, Asst. County Atty., Golden, for respondent Bd. of County Com'rs.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Jerry W. Goad, Asst. Atty. Gen., Denver, for respondent State of Colo.

KIRSHBAUM, Justice.

In *Cottonwood Farms v. Board of County Commissioners,* 725 P.2d 57 (Colo. App.1986), the Court of Appeals affirmed a district court judgment dismissing several claims contained in a complaint filed by Cottonwood Farms and Colorado Rock Company (hereinafter sometimes referred to as "applicants") for review of a decision of the Jefferson County Board of County Commissioners (the Board) denying an application to rezone land located in Jefferson County, Colorado. The Court of Appeals held, *inter alia,* that the application of the Preservation of Commercial Mineral Deposits Act (the Preservation Act), §§ 34–1–301 to –305, 14 C.R.S. (1984), to the property as zoned did not effect an unconstitutional taking of the real property. The court also stated that under the self-inflicted hardship doctrine a valid constitutional taking claim arises only when property is acquired under one zoning regulation and a subsequent

change in zoning deprives the claimant of any reasonable use of the property. We granted certiorari to review these determinations. Although we disagree with the assertion that the self-inflicted hardship doctrine serves to bar constitutional taking claims, we affirm the judgment of the Court of Appeals.

## I

By several separate purchases on December 23, 1981, and February 16, 1982, Cottonwood Farms acquired contiguous parcels of land in Jefferson County totalling approximately 323 acres. The land was at the time classified Agricultural–One under applicable county zoning regulations. On February 22, 1982, Cottonwood Farms and Colorado Rock Company filed an application with the Jefferson County Planning Department to rezone to a Planned–Development Mining classification. On April 1, 1982, Cottonwood Farms executed a lease with Colorado Rock Company, a corporation engaged in aggregate mining, whereby the 323–acre tract would be used as a rock quarry.

The Planning Department recommended conditional approval of the application. However, following extensive hearings, the Board denied the rezoning application. The Board concluded that the proposed

quarry operation would not be compatible with existing uses in the surrounding area and, in particular, would not conform to Jefferson County Comprehensive Plan provisions respecting visual, air quality, noise pollution, water quality, blasting safety and economic impact standards.

The applicants filed a complaint in the district court against the Board, two of its members (referred to hereinafter as "the Commissioners") and the State of Colorado. The complaint sought judicial review of the Board's action pursuant to C.R.C.P. 106 and declaratory relief pursuant to C.R.C.P. 57. The complaint also contained six claims for damages against the Board, the Commissioners and the State of Colorado. The applicants' second claim asserted that aggregate mining was the only reasonable use of the property, that the Preservation Act imposed unreasonable restrictions on their use of the property, and that the combination of that statute and the Board's decision effected an unconstitutional taking of their property without just compensation. Their fourth claim asserted that the zoning regulations impermissibly excluded mining as a use by right, in violation of the applicants' due process rights.[1]

The Board and the State of Colorado, pursuant to C.R.C.P. 12(b), filed motions to dismiss the six damage claims.[2] The dis-

---

**1.** In addition to the C.R.C.P. 106 claim for judicial review, the complaint contained six claims for damages and declaratory relief, summarized as follows:

(1) Knowing, intentional and bad faith denial by the Board and the Commissioners of federal constitutional guarantees of equal protection of the laws;

(2) deprivation by the Board, the Commissioners and the State of all reasonable use of the property, in conjunction with the Preservation Act, resulting in a taking of the property without compensation in violation of article II, sections 3, 15 and 25 of the Colorado Constitution and the fifth and fourteenth amendments to the United States Constitution;

(3) deprivation by the Board and the Commissioners of federal and state due process guarantees by the application of inadequate standards;

(4) deprivation by the Board and the Commissioners of federal and state due process guarantees by entirely excluding mining as a use by right in the county;

(5) deprivation by the Board and the Commissioners of federal and state due process guarantees by arbitrary and capricious consideration of impermissible grounds of decision; and

(6) violation by the Board and the Commissioners of federal and state constitutional guarantees of due process of law and equal protection of the laws, in violation of 42 U.S. C. § 1983 (1980).

Although the district court ultimately dismissed all seven claims, the applicants appealed the dismissal of the six claims above. The only issues before this court in this certiorari proceeding relate to portions of the Court of Appeals opinion affirming the district court's dismissal of the applicants' second and fourth claims.

**2.** The district court expressly stated that its ruling was made pursuant to C.R.C.P. 12(b). Moreover, because no evidence was presented to the Board or the district court respecting whether there were any reasonable uses of the property other than mining, it cannot be con-

trict court granted the motions, concluding, *inter alia,* that the Agricultural–One zoning classification was not proscribed by the Preservation Act and did not deprive the applicants of substantially all the use of their property. The district court also determined that, pursuant to this court's decision in *Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972), the claims for damages must fall because the hardship suffered by the applicants was self-inflicted.

In affirming the district court's dismissal of the applicants' second claim, the Court of Appeals concluded that application of the Preservation Act to the existing zoning classification did not effect an unconstitutional taking of the property. The Court of Appeals also indicated that a valid taking claim arises only when property is acquired under one zoning regulation and a subsequent change in zoning deprives the claimant of any reasonable use of the property. In affirming the district court's dismissal of the applicants' exclusionary zoning claim, the Court of Appeals concluded that the challenged zoning regulations in fact permitted aggregate mining under reasonable criteria which the applicants failed to meet.[3] The court also observed, again, that the applicants' problem was one of self-inflicted hardship which could not be relieved by the Board or the court.

## II

■ The applicants argue that application of the Preservation Act, §§ 34-1-301 to -305, 14 C.R.S. (1984), to their property in the context of the zoning classification affecting the property results in a denial of all reasonable use of the property. We disagree.

Section 34-1-305, 14 C.R.S. (1984), provides in pertinent part as follows:

**Preservation of commercial mineral deposits for extraction.** (1) After July 1, 1973, no board of county commission-

ers, governing body of any city and county, city, or town, or other governmental authority which has control over zoning shall, by zoning, rezoning, granting a variance, or other official action or inaction, permit the use of any area known to contain a commercial mineral deposit in a manner which would interfere with the present or future extraction of such deposit by an extractor.

(2) After adoption of a master plan for extraction for an area under its jurisdiction, no board of county commissioners, governing body of any city and county, city, or town, or other governmental authority which has control over zoning shall, by zoning, rezoning, granting a variance, or other official action or inaction, permit the use of any area containing a commercial mineral deposit in a manner which would interfere with the present or future extraction of such deposit by an extractor.

....

(5) Nothing in this section shall be construed to prohibit a use of zoned land permissible under the zoning governing such land on July 1, 1973.

Pursuant to the Preservation Act, the Colorado Geological Survey conducted a study identifying the property acquired by the petitioners as a site containing a commercial mineral deposit. *See* § 34-1-303, 14 C.R.S. (1984). In addition, the Jefferson County Planning Commission adopted a master plan in 1977 for extraction of the mineral deposits within the county. *See* § 34-1-304, 14 C.R.S. (1984). However, it is uncontroverted that since 1955 the property in question has been continuously subject to the same zoning classification—Agricultural–One. Such classification allows, *inter alia,* the construction of residences on five-acre tracts, as well as the use of the property for agricultural purposes.

cluded that the court may have properly treated the 12(b) motion to dismiss as a summary judgment motion brought under C.R.C.P. 56.

**3.** The Court of Appeals affirmed the district court ruling that the zoning regulations permit-

ted aggregate mining and therefore did not constitute exclusionary zoning, contrary to the allegations of the applicants' fourth claim. The propriety of that conclusion is not before us in this certiorari proceeding.

The clear intent of section 34-1-305(5) is to permit uses authorized by preexisting zoning regulations to continue subsequent to July 1, 1973. While a county authority deciding to amend its regulation of uses after July 1, 1973, must comply with these statutory provisions, no such action has been taken by the Board. Under these circumstances, the combination of the provisions of the Preservation Act and the Agricultural-One zoning classification applicable to the applicants' property does not prohibit all reasonable use thereof.

■ It is well-established that extant zoning ordinances do not constitute unconstitutional confiscations of property merely because they restrict the ability of landowners to realize greater profit from the use of their property. *E.g., Sellon v. City of Manitou Springs,* 745 P.2d 229 (Colo. 1987); *Landmark Land Co. v. City & County of Denver,* 728 P.2d 1281 (Colo. 1986), *appeal dismissed sub nom. Harsh Inv. Corp. v. City & County of Denver,* — U.S. —, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987); *Baum v. City & County of Denver,* 147 Colo. 104, 363 P.2d 688 (1961). In these circumstances, the zoning authority has not "taken" the property, but has merely created an obstacle to the possibility of obtaining windfall profits. *See County of Ada v. Henry,* 105 Idaho 263, 668 P.2d 994 (1983). Moreover, the fact that the plaintiff may have paid more than the land was worth under existing zoning in the hope of securing a zoning change is generally not a factor to be considered in the plaintiff's favor in analyzing a taking claim. *E.g., Westbrook v. Board of Adjustment,* 245 Ga. 15, 262 S.E.2d 785 (1980); *Mintz v. Village of Pepper Pike,* 57 Ohio App.2d 185, 386 N.E.2d 849 (1978) (noting that the plaintiffs' claim of financial loss was more accurately described as denial of a windfall). *See generally* 1 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 6.07 (1988).

Here, the applicants having agreed upon a purchase price for the property, it is reasonable to assume that at the time of the transaction the applicants assumed the property was capable of being put to some economic use. It is also true, as we have previously indicated, that the combination of the extant zoning classification and the Preservation Act does not prohibit the economic activity of aggregate mining. The applicants do not allege any changed circumstances or any new zoning action taken by the Board that allegedly reduced the value of their property. *See, e.g., Roosevelt v. City of Englewood,* 176 Colo. 576, 492 P.2d 65 (1971); *Majestic Heights Co. v. Board of County Comm'rs,* 173 Colo. 178, 476 P.2d 745 (1970). In such circumstance, the combination of the zoning regulations and the Act has not effected a taking of the property by denying all reasonable use thereof. The Board's refusal to in effect enhance the value of the property cannot be equated to conduct that reduced the value thereof.

### III

We have concluded that the Court of Appeals correctly determined that the applicants have not been deprived of all reasonable use of their property. The Court of Appeals opinion also states, however, that the applicants' inverse condemnation claim [4] is barred by the self-inflicted hardship doctrine. Because the judgment may be based in part on that broad proposition, we address the applicants' contention that the self-inflicted hardship doctrine is inapplicable to their taking claim.

Persons owning property at the time it is rezoned may challenge the validity of the new regulation on the ground that it prohibits all reasonable use of the property and therefore constitutes an unconstitutional taking thereof. *Bear Valley Drive-In Theater Corp. v. Board of County*

---

4. Inverse condemnation is an action against a government defendant to recover the value of property which has been taken in fact by the government without initiation of eminent domain proceedings pursuant to §§ 38-1-101 to -121, 16A C.R.S. (1982 & 1988 Cum.Supp.). The action is based on the "takings" clause of article II, section 15, of the Colorado Constitution, and is tried as an eminent domain proceeding. *Linnebur v. Public Service Co.,* 716 P.2d 1120 (Colo.1986).

*Comm'rs*, 173 Colo. 57, 476 P.2d 48 (1970); *City & County of Denver v. Denver Buick, Inc.*, 141 Colo. 121, 347 P.2d 919 (1959). However, the question remains whether, and under what circumstances, a property owner may challenge a zoning regulation on the ground that as applied it effects an unconstitutional taking when the owner purchased the property after the adoption of the challenged regulation.

Courts have reached varied results when addressing this issue. The majority of courts have held that the fact of prior purchase with knowledge of applicable zoning regulations does not preclude a property owner from challenging the validity of the regulations on constitutional grounds, but does constitute a factor to be considered in evaluating the claims of invalidity. *See, e.g., American Nat'l Bank & Trust Co. v. Village of Oak Lawn*, 81 Ill.App.3d 952, 36 Ill.Dec. 825, 401 N.E.2d 963 (1979); *Ardolino v. Board of Adjustment*, 24 N.J. 94, 130 A.2d 847 (1957). *See generally* 1 R. Anderson, *American Law of Zoning* § 3.35 (3d ed. 1986). Some courts have concluded that such circumstance prohibits any such challenge. *See, e.g., Leach v. North Richland Hills*, 627 S.W.2d 854 (Tex.Ct.App.1982) (applicant lacks standing); *Acker v. Baldwin*, 18 Cal. 2d 341, 115 P.2d 455 (1941) (applicant estopped); *Convent of Sisters of St. Joseph v. Winston–Salem*, 243 N.C. 316, 90 S.E.2d 879 (1956) (applicant estopped). The principle, whether recognized as an important factor or as a complete bar in zoning litigation, is frequently referred to as the "self-inflicted hardship doctrine."

Reasons offered in support of the doctrine include the notion that any harm suffered is caused by the purchaser's conduct rather than by the government's initial adoption of the regulation, *Salsbery v. District of Columbia Bd. of Zoning*, 357 A.2d 402 (D.C.App.1976) (hardship stemmed from petitioner's contracting to purchase the property, without conditioning the contract on the securing of a variance); the conclusion that the lapse of time coupled with knowledge constitutes laches or estoppel, *Appeal of McClure*, 415 Pa. 285, 203 A.2d 534 (1964) (bank purchased land despite knowledge that it was not zoned for bank use and was estopped to show unnecessary hardship); the suggestion that the right to challenge the regulations was a personal right of the prior owner and was not transferred, *Majestic Heights Co. v. Board of County Commissioners*, 173 Colo. 178, 476 P.2d 745 (1970) (action for damages is personal to the property owner suffering the taking unless specifically assigned to a subsequent purchaser of property); and that because the purchase price reflected the true value of the property as zoned, any change would create a windfall profit to the owner. *See County of Ada v. Henry*, 105 Idaho 263, 668 P.2d 994 (1983) (landowner's expectation of realizing greater profit was unreasonable because land was acquired subject to challenged ordinance). *See* 3 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 38.06 (1988); Reynolds, *Self–Induced Hardship in Zoning Variances: Does a Purchaser Have No One But Himself to Blame?*, Urb.Law 1, 13–17 (1988).

Questions concerning the extent and effect of the self-inflicted hardship doctrine usually arise when the subsequent owner requests an administrative body to grant a variance from the regulation or to rezone the property. In such cases, the owner must demonstrate that the requested change is necessary to alleviate direct and personal hardship suffered as a result of the current regulatory pattern. *See, e.g.,* § 30–28–118(2)(c), 12A C.R.S. (1986). In this context, application of the self-inflicted hardship doctrine reflects the basic economic assumption that the purchase price of a piece of property reflects its reasonable market value. The doctrine also reflects the principle that a purchaser of property subject to zoning regulations which simply restrict the potential economically viable uses of the property must be deemed to know that such regulations reduce the value, and hence the cost, of such property. *See generally* 1 R. Anderson, *American Law of Zoning* § 3.35 (3d ed. 1986). The owner's desire to obtain a variance or a rezoning can be viewed as primarily if not completely reflecting a purely

speculative interest; the owner took a calculated risk at the time of purchase in the hope of increasing the value of the investment. *See Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 227, 504 P.2d 344, 349 (1972). Courts have not encouraged the use of zoning procedures to obtain windfall profits.

However, other important principles must be acknowledged when the validity of extant zoning regulations is questioned on constitutional grounds. Among the attributes of property ownership is the right in general to use it as the owner desires, subject only to valid governmental regulation. *Jones v. Board of Adjustment,* 119 Colo. 420, 427, 204 P.2d 560, 564 (1949). Because an invalid zoning regulation cannot be imposed upon that incident of ownership, an owner should not be barred in all circumstances from establishing such invalidity simply because the property was purchased with knowledge of the existence of the regulation.

It is true that some courts have indicated that the self-inflicted hardship doctrine bars even a procedural due process challenge to zoning regulations. *Walker v. Biloxi,* 229 Miss. 890, 92 So.2d 227 (1957); *Taylor v. Schlemmer,* 353 Mo. 687, 183 S.W.2d 913 (1944). However, when an owner asserts that a zoning regulation is constitutionally invalid either facially or as applied under substantive due process or takings tests, it appears that the owner's particular economic interest is no longer the focus of the proceeding. Rather, the efficacy of the governmental act itself seems to become the primary issue of the inquiry. Thus, in substantive due process challenges to zoning regulations, the question is whether the regulation is rationally related to a legitimate governmental interest. *See, e.g., Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Sellon v. City of Manitou Springs,* 745 P.2d 229 (Colo.1987). Similarly, when the argument is advanced, as in this case, that the zoning regulations effect a taking of property by depriving the owner of all reasonable beneficial use thereof, the emphasis is on the absence of any economic use of the property rather than on whether the owner has suffered hardship because potentially more profitable uses are prohibited. *E.g., Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed. 2d 210 (1979); *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *See generally* 1 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 6.07[5] (1988). Whatever particular rationale is used to explain the self-inflicted hardship doctrine, it is not well suited to cases in which the owner directly challenges the validity of the ordinance on constitutional grounds.

The suggestion that in takings cases the focus shifts from the economic interest of the owner to the efficacy of the zoning regulation is reflected in the recent decision of the United States Supreme Court in *Nollan v. California Coastal Commission,* —— U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). In *Nollan,* the plaintiffs purchased beachfront property after the California Coastal Commission initiated a policy requiring owners of such property to grant an easement to the public for access to the ocean shore as a condition of obtaining any rebuilding permit. In reversing a California Court of Appeal decision upholding an administrative denial of the owner's request for a permit, the Supreme Court concluded that the easement requirement did not substantially advance any legitimate state interest. The Court also observed that "[s]o long as the Commission could not have deprived the prior owners of the easement without compensating them, the prior owners must be understood to have transferred their full property rights in conveying the lot." *Id.,* 107 S.Ct. at 3146 n. 2.

*Nollan* did not specifically address the self-inflicted hardship doctrine. Although the plaintiffs in *Nollan* purchased the property with knowledge of the Coastal Commission's policy, the purchase agreement was executory at the time the suit was filed and the previous owners had not yet been divested of title to the property. Furthermore, the plaintiffs in *Nollan* did not file an inverse condemnation claim for

damages.[5] Nevertheless, the *Nollan* decision does indicate that an owner who purchases property with knowledge of applicable restrictive zoning regulations is not barred by reason of that fact from asserting a constitutional challenge to the validity of the ordinance.[6]

Prior decisions of this court have not established that the self-inflicted hardship doctrine serves as a bar to all constitutional challenges of the validity of zoning ordinances. In *Levy v. Board of Adjustment*, 149 Colo. 493, 369 P.2d 991 (1962), this court initially explored the self-inflicted hardship doctrine in the context of an owner's challenge to an administrative denial of a request for a variance.[7] While declining to decide whether the doctrine constitutes an absolute bar to any efforts to obtain a variance from applicable zoning regulations, we noted that it was a factor tending to support a decision denying the request. No constitutional issues were raised in *Levy*.

We next alluded to the doctrine in the course of affirming an administrative denial of a rezoning application in *Nirk v. City of Colorado Springs*, 174 Colo. 273, 278, 483 P.2d 371, 378 (1971). We again noted that the purchase of property with knowl-

edge of an extant zoning restriction constitutes self-inflicted hardship which is at the very least a highly significant fact weighing heavily against the owner's efforts to change the zoning classification. In *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. at 227, 504 P.2d at 349, we reversed a determination by the trial court that an owner who had purchased the property with knowledge of extant zoning provisions had demonstrated sufficient hardship to establish his request for rezoning. In so doing, we observed that any hardship was self-inflicted because the owner had purchased the property with knowledge of zoning regulations which prevented maximum profitability of property. Having concluded that some economic use of the property was permitted by the challenged ordinance, we observed that the owner had no constitutional right to obtain maximum profits from the investment. *See also Ford Leasing Dev. Co. v. Board of County Comm'rs*, 186 Colo. 418, 427, 528 P.2d 237, 241 (1974); *Madis v. Higginson*, 164 Colo. 320, 434 P.2d 705 (1967). Finally, in *Collopy v. Wildlife Commission*, 625 P.2d 994 (Colo.1981), we suggested that a purchaser of property closed to goose hunting pursu-

**5.** An award of money damages for temporary takings was permitted by the United States Supreme Court in *First English Evangelical Lutheran Church v. Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). *First English Evangelical*, however, did not involve a subsequent purchaser situation.

Courts have invariably denied damages claims by subsequent purchasers with knowledge based on alleged inverse condemnation, but there has been no agreement to the precise basis of this result. *E.g., Curtis v. City of Ketchum*, 111 Idaho 27, 720 P.2d 210 (1986) (inverse condemnation claim essentially a challenge to the denial of an application and remedy limited to judicial review); *Van Duyne v. City of Crest Hill*, 136 Ill.App.3d 920, 91 Ill.Dec. 672, 483 N.E.2d 1307 (1985) (factor which barred a successful claim); *Claridge v. New Hampshire Wetlands Bd.*, 125 N.H. 745, 485 A.2d 287 (1984) (purchaser can justify few if any legitimate investment-backed expectations which rise to the level of a constitutionally protected property right); *Chokecherry Hills Estates v. Deuel County*, 294 N.W.2d 654 (S.D.1980) (purchaser in a weaker position to attack the constitutionality of the ordinance); *Lemp v. Town Board*, 90 Misc.2d 360, 394 N.Y.S.2d 517 (1977) (purchaser's remedy was invalida-

tion of the ordinance absent some displacement of private ownership, occupation or management).

**6.** *Nollan* is consistent with *Landmark Universal, Inc. v. Pitkin County Bd. of Adjustment*, 40 Colo. App. 444, 579 P.2d 1184, *cert. denied* (1978) (self-inflicted hardship doctrine inapplicable to an owner of residential property seeking a variance on the ground that a zoning ordinance adopted over 13 months prior to his purchase of the property unconstitutionally precluded all reasonable use of the property).

**7.** In *Fifth Church v. Pigg & Son*, 109 Colo. 103, 122 P.2d 887 (1942), prior to our decision in *Levy*, this court affirmed a denial of an owner's request for a declaratory judgment declaring its property improperly zoned in an action brought nine years after the purchase of the property. We noted that one who claims injury from the deprivation of a right must exercise reasonable diligence in protecting that right, and concluded that the plaintiff's long acquiescence upon which others had relied to their detriment barred the belated action. We did not refer to the self-inflicted hardship doctrine in the course of that decision.

ant to state regulation was not entitled to compensation for his inability to rent goose pits to hunters because any reduction in potential income would constitute self-inflicted hardship. *Id.* at 1000 n. 14. Although these cases recognize the vitality of the self-inflicted hardship doctrine, none of them declared that the doctrine prohibited an owner from challenging the validity of zoning regulations on a takings basis.

 In this case, the applicants argue that the self-inflicted hardship doctrine is inapplicable to a challenge to the validity of zoning regulations on the ground that as applied they constitute a taking of property. We agree, and therefore note our disagreement with those statements in the Court of Appeals opinion suggesting that a property owner seeking to challenge a zoning regulation on the ground that it effects an unconstitutional taking of property by denying all reasonable economic use thereof may not assert such claim if the owner purchased the property subsequent to the effective date of the challenged regulation. In our view, while that fact may be relevant to the determination of whether the regulation in fact prohibits all reasonable economic use of the property, it would not prohibit the owner from challenging the validity of the regulation on the ground that it effects a taking without just compensation. A contrary rule might encourage the adoption of overly restrictive zoning regulations. The self-inflicted hardship doctrine cannot serve to insulate a zoning regulation that offends constitutional standards prohibiting the governmental taking of private property without just compensation from legitimate challenge by a property owner.

### IV

The judgment of the Court of Appeals is affirmed insofar as it is based on the conclusion that the applicants were not deprived of all reasonable economic use of their property. We disavow that portion of the opinion that suggests the self-inflicted hardship doctrine invariably prevents an owner who purchased property with knowledge of applicable zoning regulations from

subsequently attacking the validity of those regulations on the ground that they effect an unconstitutional taking of the property.

JUDGMENT AFFIRMED.