■    HARBOR FARMS, INC., Appellant, v. NASSAU COUNTY PLANNING COMMISSION, Respondent.— In a proceeding pursuant to article 78 of the CPLR to annul respondent's determination dated August 3, 1971, denying petitioner's application for final approval of certain subdivision plats, petitioner appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Nassau County, entered March 14, 1972, as, on reargument, dismissed the petition. Judgment reversed insofar as appealed from, on the law, without costs, determination annulled and matter remitted to respondent for further proceedings not inconsistent with the views herein set forth: The plats in question are known as Anchorage Bay Estates Sections 1, 2 and 3. The premises are located in Merrick, within the Town of Hempstead and situated in a peninsula bordered on the east by Cedar Swamp Channel. The plats contain a total of 10.765 acres and 53 building lots. Section 1 contains 2.634 acres and 13 building lots. Section 2 contains 2.741 acres and 12 building lots, of which three will have water frontage. Section 3 contains 5.390 acres and 28 building lots, of which 16 will have water frontage. At the time of the application for final approval, most of the proposed subdivision was under water at high tide. The easterly boundary line, and hence the width of the channel, had previously been established by agreement between petitioner's predecessor in title and the Town of Hempstead, as owner of the land lying within the bed of the channel. Similar agreements had been entered into by the town and property owners to the north and south of the parcel. Petitioner's property is just about the last remaining undeveloped area in the peninsula. It is in a residential district and petitioner has complied in all respects with the zoning ordinance. In addition, the plats bear the approvals of the Town of Hempstead as to surface drainage (storm water drainage outfalls) and street layout and the State Department of Health as to water supply and sewage disposal (septic tanks and tile fields). It appears that the area is eventually to receive public sewers but, since completion of the treatment plant at Wantagh and an ocean outfall is still far off, approval was given to a private sewage disposal system for interim use. Respondent disapproved the subdivision plats upon ecological grounds. In particular, it found, *inter alia*, that the proposed development, including the land fill operation pertaining to it, would lessen the exchange flow of the water in the channel and create stagnation, thereby increasing the concentration of pollutants and bacterial levels therein; that leaching from the septic tanks and tile fields could detrimentally affect the water quality of the channel; and that the use of storm water drainage outfalls, channeling surface drainage directly into the waterway, would result in the spilling of additional pollutants into the channel. Special Term found, and we agree, that respondent has the power and authority to consider the effect of the instant applications for approval of subdivision plats upon pollution of the environment and the public health and welfare of the county residents. However, we do not agree with Special Term that respondent's blanket disapproval was supportable upon the evidence. The proof was not only conflicting but inconclusive. Thus, for example, contrary to respondent's determination, all of the witnesses virtually agreed that narrowing the channel adjacent to petitioner's property would actually increase the velocity of the flow and thereby provide a flushing action, as the channel was already narrower to the north and south. It is possible that the concentration of pollutants in the channel would ultimately be increased,

but this would result from reduced total gallonage, not reduced flow; and there is no proof in this record as to how much gallonage will be reduced, if at all, since petitioner is also going to dredge part of the channel and deepen it. As to the proposed use of storm water outfalls for surface drainage, which would spill directly into the channel, the problem is even more complicated. The record indicates that this spilloff adds pollutants, although whether the increase would even be measurable or significant was hotly disputed. Yet at the same time, it is clear that such outfalls are in common use throughout this area, will not be affected by the eventual switchover to a public sewage system and may even be beneficial insofar as the additional fresh rain water improves the water quality of the channel. Furthermore, aside from the question of whether respondent's determination is supported by substantial evidence, there is a much more serious problem as to whether its unconditional disapproval may not be tantamount to an unconstitutional confiscation of petitioner's property. "No matter how pressing a problem may be, private property may not be so interfered with as to amount to a taking without compensation, even for a public purpose or to advance the general welfare" (*Salamar Bldrs. Corp.* v. *Tuttle,* 29 N Y 2d 221, 225). From the tenor of certain statements by respondent's members upon the hearings and the nature of the grounds of disapproval, respondent apparently intends to prevent any development of this parcel whatsoever and to require petitioner to maintain it in its existing natural marshland state. Special Term also appears to have been troubled by this aspect of the case, but sought to obviate any difficulty by noting that, in sustaining respondent's action, it was not precluding a further application by petitioner in order to conform to reasonable regulation in the area of pollution. This invitation is, however, meaningless insofar as petitioner has already complied with all pertinent regulations and ordinances and respondent has not even suggested any alternative measures which petitioner might take and thereby secure approval of its plans. Recognizing, however, that respondent is justifiably concerned with the effect of petitioner's proposed development upon environmental pollution and that the proof might warrant *reasonable* restrictions upon its right to develop the property, we hold that the judgment sustaining the determination should be reversed insofar as appealed from, respondent's determination annulled and the matter remitted to respondent for reconsideration. We reiterate that respondent cannot completely deny petitioner, the use of its property in the guise of regulation, but we see no bar to approval of the plats upon reasonable, specified conditions. Hopkins, Acting P. J., Munder, Martuscello and Christ, JJ., concur.