No. 49,643

Ventures In Property I, a Partnership, *Appellant*, v. The City of Wichita and the Department of Transportation of the State of Kansas, *Appellees*.

(594 P.2d 671)

Opinion filed May 5, 1979.

*William P. Higgins,* of Wichita, argued the cause and was on the brief for the appellant.

*H. R. Kuhn,* of Wichita, argued the cause, and *John Dekker,* of Wichita, was with him on the brief for the appellee City of Wichita.

*John W. Strahan,* first assistant attorney, argued the cause, and *Donald S. Simons,* chief attorney, was with him on the brief for the appellee Kansas Department of Transportation.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an action brought under K.S.A. 60-1701 for a declaratory judgment against the City of Wichita and the Kansas Department of Transportation (defendants-appellees). Ventures in Property I (plaintiff-appellant) alleges the City of Wichita took its land by inverse condemnation when it *declined to approve platting* of the property in contemplation of the building of a future highway known as the K-96 Highway Corridor (hereafter Northeast Circumferential). The trial court granted the appellee Secretary of Transportation's motion for summary judgment and held appellant's sole remedy lay under K.S.A. 12-712.

The essential facts are not seriously disputed. The appellant acquired approximately 48 acres of real property located immediately outside the city limits of Wichita, Kansas, and within the three-mile plat jurisdiction of the city in August of 1972. At that time the property had an R-1 Sedgwick County zoning classification and was being used for agricultural purposes. The appellant intended to develop the property into a residential subdivision.

Thereafter the appellant filed an application for a zone change and an application for approval of a conditional use permit with the Wichita Metropolitan Area Planning Commission (hereafter MAPC) on December 12, 1972. During the course of the hearing on the applications, the Northeast Circumferential was discussed at great length.

At that time numerous locations for the Northeast Circumferential had been under study by the state and local authorities for over twenty years. The proposed corridor of the Northeast Circumferential consisted of a strip of land approximately 300 feet in width which extended over the southern portion of the appellant's land. The project had proceeded no further than preliminary engineering studies.

The MAPC approved the appellant's applications with the assurance that a plat would not be submitted until such time as the alignment of the Northeast Circumferential was selected. Furthermore, appellant was instructed its site plan would have to

be redesigned if the southerly alignment was selected. The Board of City Commissioners then followed the recommendations of the MAPC and granted the applications subject to the above mentioned restrictions on March 7, 1973.

After waiting until February of 1976 with no further determination having been made concerning the Northeast Circumferential, appellant contacted its design consultant and had a sketch plat prepared on February 24, 1976, and a sketch plat with the apartment development superimposed prepared and revised on February 26, 1976. The plats completely disregarded the proposed highway alignment. They were reviewed by the subdivision committee of the MAPC and on April 26, 1976, the committee authorized the appellant to proceed with the preparation of a preliminary plat and recommended the following:

"A. A provisional setback of approximately 300 feet from the south property line shall be temporarily reserved until the alignment of the Northeast Circumferential is determined. This can be accomplished by a notation on the plat and granting of said setback by separate instrument and may be based on a time limit similar to the method utilized on the Comotara Business Park Addition to the east, or as was proposed on the project at the northwest corner of 127th Street East and Central. Turn-arounds at this temporary south development line shall be provided for the three north-south streets as shown on the sketch plat."

The preliminary plat was then prepared and submitted to the subdivision committee which approved it subject to certain conditions which included the following:

"A. A final plat shall be prepared and submitted for only that portion of the overall preliminary north of the north line of the K-96 highway corridor. The portion of the plat within the corridor would be considered for final platting at such time as the balance of the property has developed and the highway right-of-way still not finally engineered nor acquired."

The appellant refused to follow the recommendation and on June 1, 1976, unsuccessfully filed an application for subdivision approval and a preliminary plat with the MAPC. It then appealed the decision to the governing body or Board of Commissioners of the City of Wichita.

As a further precautionary method, MAPC sent a copy of the plat with a letter of inquiry to the Secretary of Transportation on June 15, 1976. LeRoy Pitt, an engineer with the department, responded by letter on August 24, 1976, that there was no change in the proposed highway alignment.

Following the recommendations of the MAPC the plat, as

submitted, was rejected by a unanimous vote. Comments at the time of the vote by several of the commissioners illustrate their dilemma:

"Commissioner Stevens: I can understand the concern because really it amounts to condemnation without compensation and I don't know how long people are expected to wait, but Manager, I think you ought to make certain that this Northeast Circumferential item is placed on the next inter-governmental conference, and I think it's long past due that both the City and County get together with our legislators and put the pressure on that something's got to be done. Either build the darn thing or else say 'No, we aren't going to.'

. . . .

"Mayor Donnell: Well, my feeling is that Mr. Higgins is in an unfortunate situation and though I have not often agreed about the Map Street Act, condemning and so on without compensation, as a matter of fact the opposite tends to happen, it seems to me, just as often, mainly that people build things so that they can be condemned so that the amount they will gain from the condemnation will be greater. That happens once in a while also, but in this particular case I would happen to agree with Mr. Higgins, I think that if this is not resolved pretty shortly it certainly is allocating land without any fair compensation and keeping him and his clients from developing it."

In any event, the alternative of filing a final plat of appellant's land north of the north line of the Northeast Circumferential was approved. The portion within the Northeast Circumferential would be considered for final platting after the appellant's other acreage had been developed if the right-of-way for the highway still had not been finally determined and acquired. The appellant then filed this action.

At the trial the parties stipulated that the minutes of the meetings of the city commissioners at which the plat was considered should be admitted in evidence together with the plat and certain sketches, maps, and other correspondence. The court determined *there had not been a wrongful taking* and stated:

"In making my findings of fact and conclusions of law the Court is considering all of the evidence that was introduced and the stipulations and arguments of Counsel and the whole packet.

"There isn't any question but that it is grossly immoral and illegal for any government body, city and anybody else, to use their powers of granting building permits or zoning or platting, or anything else they have in order to hold in limbo the area for possible condemnation for highways or streets later on. That simply would just be real bad; and that is what most of the cases that Mr. Higgins quoted have stated. And I agree with that. When I said that I was unfamiliar with inverse condemnation in Kansas, what I really meant—I should have expanded—was I knew of no cases where it had been applied in a zoning or platting case. I was aware of cases where damage had already occurred or where access had been

barred by a highway or something that that particular doctrine of compensation was used.

"But, we are not talking about that in the captioned case. We are talking about zoning and we are talking about platting. Now, the Kansas statutes expressly give the City and County Commissioners power to plat and zone the community for the purposes of orderly, healthful, crime free, proper operating cities and counties so that you don't have flooding in certain areas, that it's coordinated, and so the thing is orderly; but their ruler always must be reasonable. Under our private property concept a person may use his property legally for any use that is legal. So, consequently, any sort of a restriction would have to apply to everybody in a zoning or platting situation.

"I don't think the City of Wichita could deny this particular Plaintiff a platting of this area simply because later on they might want a highway on the south 350 feet: Neither do I think that inverse condemnation philosophy of damages can be used in a platting case. The Kansas Legislature has provided a remedy for that in 12-712, Kansas Statutes Annotated, 'Any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the District Court of the County in which such city is situated, against the governing body of said city.'

"What that means is this: That if the Plaintiff's plat were turned down and rejected for the sole reason that 350 feet was to be held inactive for a possible future highway, that could have been brought to the District Court and the Court could decide, after proper evidence and citing of the law, as to whether such a requirement in the plat is reasonable. I don't think it is. What some other judge would say would depend upon the evidence, I suppose, and the law. But, that is the remedy allowed in these kinds of cases. If I would simply appoint appraisers in this case to assess some kind of damage, I don't know what kind of damage they would arrive at or what the criteria would be in not being able to use 350 feet—and for what period of time nobody knows. Whether or not leaving this situation as it is with the plat not even considering and including the whole project would allow them to develop part of it with flooding possibly later, I don't know. It doesn't look to me like this is the proper way to handle it. They should either be able to plat the whole area or probably none of it.

"The Court is going to find that this particular hearing before me shall not be declared *res adjudicata* on this question of reasonableness of the holding back of the plat as was given in the evidence in the case; but I cannot find that I should allow damages under inverse condemnation. So, I simply deny that claim, divide up the costs half in half to each party and tell the Plaintiff that he can refile under 12-712 on the sole question of reasonableness, which shouldn't take very long to do."

Appeal from this order has been duly perfected.

Preliminary to our discussion we note the Northeast Circumferential project remains inactive to this date. The preliminary field surveys have not been initiated, and planning has gone no further than the initial highway corridor. No right-of-way plans have been made and no facility has been constructed. Nor is the

Northeast Circumferential one of the projects proposed for further funding in the Secretary of Transportation's current plans through 1984, as approved by the Highway Advisory Committee on May 14, 1976. In short the project was and currently remains in a hold and study status.

The appellant first contends the trial court erred in finding its sole and only remedy lay under K.S.A. 12-712. The appellant's petition states that the City of Wichita and the Department of Transportation have taken from the appellant all rights, title and interest to the property in question. The appellant further alleges the culmination of this taking occurred when the city refused to allow the *platting* of the appellant's property. The appellant does not question the reasonableness of zoning in this case; instead, it complains of the refusal of the City of Wichita to approve its *platting plans.*

K.S.A. 12-712 provides:

"Any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the district court of the county in which such city is situated, against the governing body of said city."

In *Sabatini v. Jayhawk Construction Co.,* 214 Kan. 408, Syl. ¶ 4, 520 P.2d 1230 (1974) this court held:

"The review of administrative proceedings provided in K.S.A. 12-712 relates to zoning regulations and ordinances and does not apply to the annexation and *platting* of land." (Emphasis added.)

We went on to state:

"The platting and annexation of land by municipal corporations are legislative functions since municipal corporations are creatures of the legislature exercising only such powers of existence and extension of boundaries as are conferred by the law plus those necessary to make the conferred powers effective. . . .

. . . . .

"It is not a proper judicial function for a court to inquire into the reasonableness, wisdom, necessity or advisability of annexing and platting land. In this area of legislative function the judicial duty of the courts is limited to the determination of whether the city was granted the necessary statutory authority to act and, if so, whether it acted within that authority." (p. 413.)

See also *Clarke v. City of Wichita,* 218 Kan. 334, 349, 543 P.2d 973 (1975).

Thus, the trial court was incorrect when it instructed the appellant to bring its action under K.S.A. 12-712. This court must

necessarily determine whether declaratory judgment is the proper method to question the propriety of platting.

At least two prior Kansas cases have questioned the propriety of platting actions by mandamus. See *Burke & McCaffrey, Inc. v. City of Merriam,* 198 Kan. 325, 424 P.2d 483 (1967); *Hudson Oil Co. v. City of Wichita,* 193 Kan. 623, 396 P.2d 271 (1964). Here appellant brought a declaratory judgment action to determine whether a taking had occurred under K.S.A. 60-1701. It provides in part:

"In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceedings shall be open to objection on the ground that a judgment or order merely declaratory of right is the only relief requested."

As a general rule declaratory judgment should not be entered upon a state of facts which has not arisen and may never arise. *Woolums v. Simonsen,* 214 Kan. 722, 728, 522 P.2d 1321 (1974). In other words, declaratory relief is inappropriate where there is no justiciable controversy between adverse parties. The parties must be able to assert rights which have developed before an actual controversy can exist which is justiciable under our declaratory judgment act. *Johnson County Sports Authority v. Shanahan,* 210 Kan. 253, Syl. ¶ 4, 499 P.2d 1090 (1972). A declaratory judgment action cannot be maintained to settle a dispute which is purely academic. *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.,* 215 Kan. 937, 529 P.2d 171 (1974) and cases cited therein.

Our court has approved declaratory relief in several zoning cases. See *Phillips v. Vieux,* 210 Kan. 612, 504 P.2d 196 (1972); *Union Quarries, Inc. v. Board of County Commissioners,* 206 Kan. 268, 478 P.2d 181 (1970). While no Kansas case is in point, several jurisdictions have been directly confronted with whether declaratory relief is proper under situations similar to the one presented here. In *Steel Hill Development, Inc. v. Town of Sanbornton,* 335 F. Supp. 947 (D. N.H. 1971), the defendant town proposed an amendment to an existing zoning ordinance after plaintiff had acquired approximately 500 acres of land for development. Plaintiff had submitted a subdivision plan for 36 lots prior to the zoning amendment. That plan was approved by the planning board; however, the board refused to take any action on

an additional subdivision plan for the remainder of the land because of the proposed amendment. The plaintiff claimed a taking had occurred under the Fifth and Fourteenth Amendments, and the court held an actual controversy existed.

The opposite view recognizes declaratory judgment will not lie where the controversy is not sufficiently real or immediate. In *State of California v. Oroville-Wyandotte Irr. Dist.,* 409 F.2d 532 (9th Cir. 1969), the court held it was too early to determine whether the potential effect of a California Department of Water Resources Dam project would constitute a taking. See also *Ash v. Northern Illinois Gas Company,* 362 F.2d 148 (7th Cir. 1966).

Finally several jurisdictions have considered the issues presented here by declaratory judgment without first determining whether declaratory relief was proper. See *Weintraub v. Flood Control District of Maricopa Co.,* 104 Ariz. 566, 456 P.2d 936 (1969); *Fifth Avenue Corp. v. Washington County Etc.,* 282 Or. 591, 581 P.2d 50 (1978).

We hold an actual controversy exists and the appellant may question the propriety of platting under the facts presented here. While the appellant's action more properly lies in mandamus or as a declaratory judgment action attacking the platting ordinance, K.S.A. 12-705b, enough evidence of an actual controversy exists to determine whether a taking has occurred by declaratory relief.

The appellant questions whether a physical invasion of the landowner's property is necessary to constitute a taking. It asserts a taking in inverse condemnation occurs every time a landowner's right to use, develop, and quietly and peacefully enjoy its property is restricted. No action for damages has been filed nor has any evidence been presented on the question of damages. Both appellees suggest the refusal of platting by a city does not constitute a taking in inverse condemnation.

In *Wittke v. Kusel,* 215 Kan. 403, 524 P.2d 774 (1974), this court discussed the doctrine of inverse condemnation and approved its definition as follows:

" '[A] remedy available to one whose land has been taken for public use. "Inverse condemnation" has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.' " (p. 405.)

Inverse condemnation actions are in the nature of a suit on

implied contract. When a public entity appropriates and uses property or rights therein, without compensating the owner, an implied contractual obligation arises to pay the owner reasonable value of the property or rights taken without compensation. *Sanders v. State Highway Commission,* 211 Kan. 776, 781, 508 P.2d 981 (1973).

This court has recently recognized inverse condemnation suits where property was physically taken (*Ellis v. City of Kansas City,* 225 Kan. 168, 589 P.2d 552 [1979]; *In re Central Kansas Electric Coop., Inc.,* 224 Kan. 308, 582 P.2d 228 [1978]; *Rostine v. City of Hutchinson,* 219 Kan. 320, 548 P.2d 756 [1976]; *Wittke v. Kusel,* 215 Kan. at 405-06); where a leasehold interest was taken (*State Highway Commission v. Bullard,* 208 Kan. 558, 493 P.2d 196 [1972]); where access rights were curtailed (*Kohn Enterprises, Inc. v. City of Overland Park,* 221 Kan. 230, 559 P.2d 771 [1977]; *Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 [1965]); and where rights to lateral support were appropriated (*Sanders v. State Highway Commission,* 211 Kan. at 787).

Generally inverse condemnation will not lie unless a taking has occurred. We have previously defined the word "take" or "taken" as used in our law of eminent domain as the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides. See *e.g., Steck v. City of Wichita,* 179 Kan. 305, 313, 295 P.2d 1068 (1956); *Foster v. City of Augusta,* 165 Kan. 684, 690, 199 P.2d 779 (1948). Strict adherence to this definition has been relaxed in our more recent decisions pertaining to lateral support and access.

While the issue has never arisen in this context before our court, generally the mere planning or plotting in anticipation of a public improvement does not constitute a taking or damaging of the property affected. Annot., 37 A.L.R.3d 127, 131; see also 26 Am. Jur. 2d, Eminent Domain § 169, p. 843; 29A C.J.S., Eminent Domain § 135; 2 Nichols on Eminent Domain, "Taking and Damage" § 6.13 (3rd rev. ed. 1976); 5A Thompson on Real Property, "Eminent Domain" § 2579 (1978).

In *Smith v. State of California,* 50 Cal. App. 3d 529, 123 Cal. Rptr. 745 (1975), the trial court dismissed an action by landowners against the state for inverse condemnation and damages based

upon the State Highway Commission's adoption and public announcement of a proposed freeway route that would bisect the plaintiff's property. Plaintiff alleged that in seven years following announcement of the plan defendant had taken no specific action to acquire the property, that it had presented information to the public that acquisition would not be accomplished for at least eight more years, and that the delay was arbitrary, capricious and unreasonable and constituted a de facto taking of the property. In affirming the lower court the Court of Appeals states:

"Without question, when the state embarks upon a plan to develop a freeway, because of the public airing which is legally attendant to such a project, marketability of property in the affected area is adversely impacted. On the other hand, invocation of the doctrine of inverse condemnation or the assessment of . damages against the state upon the public announcement of the state's plan would result in acquisition of large amounts of property that may never be used and would inordinately increase the cost of any such project. The real result would be a severe hampering of the state's ability to undertake necessary and worthwhile improvements in our highway system." (p. 536.)

See also *Marvin E. Nieberg Real Estate Co. v. St. Louis County,* 488 S.W.2d 626 (Mo. 1973); *Bakken v. State Highway Comm'n,* 142 Mont. 166, 382 P.2d 550 (1963); *Schnack v. State, By Dept. of Transp.,* 160 N.J. Super. 343, 389 A.2d 1006 (1978); *Kingston East Realty Co. v. State of N. J.,* 133 N.J. Super. 234, 336 A.2d 40 (1975); *Fifth Avenue Corp. v. Washington County, Etc.,* 282 Or. 591, 581 P.2d 50 (1978) and cases cited therein.

While we adhere to the foregoing general rules on inverse condemnation, the factual situation presented herein requires careful scrutiny and more study. As heretofore noted, our rule as to whether there has been a compensable "taking" of property has been relaxed in recent decisions concerning lateral support and access. What have other jurisdictions done?

In 1973 the Maryland court stated arbitrary, unreasonable and capricious conduct by governmental authorities may constitute a "taking" without an actual physical taking. *Arnold v. Prince George's County,* 270 Md. 285, 311 A.2d 223 (1973). In 1975 the Texas Court of Civil Appeals recognized that governmental restrictions on the use of property can be so burdensome as to constitute a compensable taking. *San Antonio River Authority v. Garrett Brothers,* 528 S.W.2d 266 (Tex. Civ. App. 1975).

At issue in *Penna. Coal Co. v. Mahon,* 260 U.S. 393, 67 L.Ed. 322, 43 S.Ct. 158 (1922), was the validity of a Pennsylvania

statute which prohibited the extraction of coal that would cause subsidence of the land's surface. In speaking of the limitations on the exercise of governmental police power Justice Holmes said:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power." (p. 413.)

In 1977 The Texas Court of Civil Appeals said a direct physical invasion of property is not required under the eminent domain section of the constitution for a property owner to be entitled to compensation for damaging his property for public use. *City of Austin v. Teague,* 556 S.W.2d 400 (Tex. Civ. App. 1977). There a developer sought a water permit and his application was refused for the express purpose of preventing all development of a tract to preserve it as a scenic easement for the benefit of the public. The court held:

"We hold that the defense of governmental function is not available to the City of Austin to preclude imposition of liability for the acts of its City Council in interrupting plaintiffs' development of his land by arbitrarily refusing the water development permit, and that such conduct of the City amounted to a taking or damaging within constitutional prohibition." (p. 404.)

The Federal District Court of Nevada said that both the purpose for which police power is invoked and the means by which it is pursued must be constitutionally sound. Neither ends nor means may be unreasonable or arbitrary and neither must "take" private property unless the owner is compensated therefor. *Western Internat'l Hotels v. Tahoe Reg. Plan. Agcy.,* 387 F. Supp. 429 (D. Nev. 1975).

In 1971 the Michigan Court of Appeals in *Gordon v. Warren Planning Comm,* 29 Mich. App. 309, 185 N.W.2d 61 (1971), pointed out that zoning is justified under the police power, but, except in extraordinary circumstances, private property cannot be appropriated under the police power without compensation. The state may not, in the name of police power, require a property

owner to refrain indefinitely and without payment from using and enjoying his property. This case was upheld by the Michigan Supreme Court. *Gordon v. Warren Planning Comm,* 388 Mich. 82, 91, 199 N.W.2d 465 (1972).

A New York court in 1972 questioned the county planning commission's unconditional disapproval of a subdivision plat within a marshy area and suggested that it might constitute an unconstitutional confiscation of property without compensation. The commission there intended to prevent any development of the parcel whatsoever which would, in effect, require the owner to maintain it in its existing natural marshland state. *Harbor Farms, Inc. v. Nassau Cty. Plan. Com'n,* 40 App. Div. 2d 517, 334 N.Y.S.2d 412 (1972). See also *Com. ex rel. D.N.R. and E.P. v. Stephens,* 539 S.W.2d 303 (Ky. 1976).

A Louisiana court of appeals in 1971 held that the refusal to approve a subdivision, unless the subdivider included within the map or plan a dedication of an area sufficient to accommodate an extension of a street for the primary benefit for the public at large, violated the constitutional prohibition against taking of private property for public use without payment of compensation. The court also noted that numerous authorities hold that zoning regulations cannot be used under the guise of a proper exercise of the police power in order to defeat constitutional requirements for just compensation. *Schwing v. City of Baton Rouge,* 249 So.2d 304 (La. App.), *writ denied* 259 La. 770, 252 So.2d 667 (1971).

Summarizing the broad authority on the issue under consideration is 1 Nichols on Eminent Domain, "Nature and Origin of Power" § 1.42(1), p. 116-121 (3d rev. ed. 1976), which states:

"Not only is an actual physical appropriation, under an attempted exercise of the police power, in practical effect an exercise of the power of eminent domain, but if regulative legislation is so unreasonable or arbitrary as virtually to deprive a person of the complete use and enjoyment of his property, it comes within the purview of the law of eminent domain. Such legislation is an invalid exercise of the police power since it is clearly unreasonable and arbitrary. It is invalid as an exercise of the power of eminent domain since no provision is made for compensation."

An eminent domain case touching upon the point at issue here is *Dept. of Public Works & Bldgs. v. Exch. Nat'l Bk.,* 31 Ill. App. 3rd 88, 334 N.E.2d 810 (1975). In the opinion the court said:

"Although in most situations, a collateral attack upon zoning is not permitted in an eminent domain proceeding [citation omitted], that principle is applicable to

the situation where the condemnor purporting to exercise its police power by enacting a zoning ordinance *has in reality discriminated against a particular parcel or parcels of land in order to depress their value with a view to future takings in eminent domain.* [Citations omitted.] In such a situation, such action has been vigorously condemned as confiscatory and the condemnee may attack the validity of the zoning ordinance in the eminent domain action and if successful, require that his property be valued free of its restrictions. The courts have considered this situation extreme because it contains positive elements of confiscation and denial of basic constitutional rights." (p. 98) (Emphasis added.)

There an ordinance zoned the property down to residential use at the time of notification of condemnation, a very simple act designed to accomplish a reduction in value of the property so that the taking would be less expensive to the condemning authority.

Here, neither the reasonableness of the use to which the property was to be put by the appellant, nor the reasonableness of the provisions of the proposed plat submitted by the appellant were questioned by the Wichita City Commission. On the admitted facts the matter before the Wichita City Commission was how to reserve the highway corridor from development so that future condemnation would be less costly, and so that development would not jeopardize the location of the corridor for highway purposes.

In *Eldridge v. City of Palo Alto,* 57 Cal. App. 3d 613, 129 Cal. Rptr. 575 (1976), the California Court of Appeals considered a complaint which sounded in inverse condemnation. The landowner sought compensation on the ground that the zoning of his 750 acres of foothill property as permanent "open space" with development limited to single-family dwellings on ten-acre minimum lots, went beyond the scope of the police power and constituted a taking for which compensation was constitutionally required. After reviewing many authorities the court said:

"We opine, from a consideration of the foregoing authority, that a valid zoning ordinance may nevertheless operate so oppressively as to amount to a taking, thus giving an aggrieved landowner a right to damages in inverse condemnation." (p. 621.)

As early as 1932 in *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 243 N.W. 317 (1932), the court said it had little hesitation in pronouncing an ordinance restricting a block in the heart of the industrial section to residential purposes, supposedly so the city could destroy the value of the property and then condemn it for a

boulevard project with less expense to itself, as unreasonable and void, and such a use of the power of zoning as could not be sanctioned.

*Board of Com'rs of State Inst. v. Tallahasee B. & T. Co.,* 108 So.2d 74 (Fla. App. 1958), involved zoning regulations which prohibited commercial buildings on the proposed capitol center area. There the public records of both the state and the city clearly indicated that prior to the enactment of such regulations, the city planner issued a report stating that unless measures were taken to prevent it, private property would be utilized for business purposes within the capitol center area, *which use, if not restrained, would seriously increase the cost of acquisition if and when the state used its power of eminent domain.* In commenting on the matter the court said it could not conceive of a policy of government afflicted with greater potentials for abuse of a private citizen, even when the policy is adorned with the mantle of civic improvement. By doing so, the court said, the officials concerned imposed upon certain private property owners in the involved area the burden of suffering what amounted to an arbitrary and unreasonable restraint on the use of property.

The first case to use the term "corridor route" is *Lackman v. Hall,* 364 A.2d 1244 (Del. Ch. 1976). There the legislature of the State of Delaware passed a statute authorizing the establishment of prospective highway right-of-way areas designated as "corridor routes." This was an obvious attempt by the state legislature to do by statute what the Wichita City Commission attempted to do by its platting decision herein regarding the appellant's property. The statutes were challenged. They provided a procedure for the Department of Transportation to determine from time to time, and to establish in advance, anticipated future need for certain highway rights-of-way, and to file a plan of such proposed future routes for public record. The state could thereafter exercise supervision and control over construction and land improvement within the future routes, and thereby keep the eventual acquisition costs to the state at a minimum when and if the land within the "corridor route" was eventually taken for highway construction purposes. The legislation provided that the landowners had the right to use the property in any manner that would not increase the cost to the state in future procurement of such land for highway purposes. The statute further provided that in the

event a landowner requested a building permit, which had the effect of being detrimental to the future highway planning and construction by increase of cost, the State Department of Highways and Transportation could within 180 days after making certain findings institute condemnation proceedings to acquire all of the land described in the building permit application as may be located in the future highway right-of-way. In effect, the property owner would be triggering his own condemnation by filing the necessary application for a building permit. The Delaware court found the total concept unconstitutional and in so doing the court in its opinion said:

"The 'Corridor Route' legislation, as I view it, attempts to do indirectly what *State v. 0.62033 Acres* forbids to be accomplished directly. It places a limitation on the rights of private property based on the possibility or probability that the property will be needed for a public use at some indefinite future time. The primary difference is that it purports to do so without a taking and without compensation. Rather it merely 'sets it aside' for a possible public use subject to certain conditions which otherwise would not apply to its utilization by its owners.

. . . .

"More importantly, as I see it, this intended safeguard of property rights would actually precipitate a violation of *State v. 0.62033 Acres,* supra. The legislation provides that location on the Final Map is not a taking but rather is a setting aside for future use and procurement as needed. Thus, the very designation of property on a Final Map pursuant to the Corridor Route statutes is a public acknowledgement that the land so designated is not immediately needed for any public purpose. To then condemn pursuant to 9 Del. C. § 3005(d) rather than to approve a building permit as to any given parcel so that the future cost of procurement would not be increased would be to take land for possible highway usage at an indefinite future time in the name of present economic expediency. This is exactly what *State v. 0.62033 Acres* forbids as an improper purpose of eminent domain and an invasion of the landowner's rights under Article I, § 7 and § 8 of the Delaware Constitution." (p. 1251.)

It should be noted *Lackman v. Hall,* is not a zoning case, but a case based upon statutes of the Delaware legislature. There the *legislative power was exercised* through the issuance of building permits.

The foregoing authorities from other jurisdictions illustrate there is a considerable body of case law that recognizes a compensable "taking" of property or property rights may occur, short of an actual physical taking of the property, upon a variety of factual situations giving rise to these decisions. We hasten to add, our opinion should not be construed as an adoption of the law upon the factual situations stated in these foreign cases.

In the instant case the Wichita City Commission in the exercise of its legislative powers unanimously approved the plan submitted by the landowners for the development of the tract in question, subject however to the restriction provided by the subdivision committee of the MAPC. The sole purpose of the restriction was to control the use of the plaintiff's property to reserve the corridor for possible future condemnation. The restriction had to do with the reservation of 13.17 acres out of a proposed 48 acre development. In effect the Wichita City Commission was reserving the property in the highway corridor at its undeveloped value to be used for highway purposes at some indefinite date in the distant future.

The offer of the Wichita City Commission to plat the remaining 35.6 acres for development was not a viable alternative to the landowner under the circumstances of this particular case. Until such time as the right-of-way was finally determined, there was an additional 4.59 acres freeboard area for a proposed lake, making the total area that could not be developed 17.96 acres. The original platting of the area called for the construction of a lake to account for the drainage problems in the area. The restriction, based upon the need for the highway corridor, interfered with the construction of a lake, and thus interfered with the drainage of the entire area to be developed. The elimination of the lake and dam could throw water presently flowing in the highway corridor area to the north of the highway corridor onto that portion of the appellant's property not reserved for highway purposes.

It is argued by the appellant there is no way financing could be obtained on any portion of this tract by reason of the public record with the restrictions upon the property.

The trial court was reluctant to release its jurisdiction when it declared its order should not be construed as *res adjudicata* on the question of reasonableness. The trial court erroneously concluded, however, that the appellant could proceed under the provisions of K.S.A. 12-712.

Confining our decision to the factual situation presented, we hold where the proposed platting of land by an owner for residential development is approved by the governing body of a city in accordance with previously approved zoning regulations, subject to the sole restriction that a portion of the land in a defined

highway corridor within the proposed plat be reserved in its undeveloped state for possible highway purposes at some indefinite date in the distant future, the governing body has taken property from the landowner for which it is required to respond in damages by inverse condemnation.

Being a matter of first impression and realizing the harsh result, if immediately applied, the court in the exercise of its equitable powers suspends application of the rule and remands the case to the trial court with directions to retain jurisdiction. If within a period of six months from May 5, 1979, the Wichita City Commission does not approve the proposed plat of the appellant's property according to the proposed plat submitted, absent restrictions concerning the highway corridor, or if within a period of six months from May 5, 1979, the Department of Transportation does not take by the exercise of its power of eminent domain the proposed highway corridor which was the subject of the restrictions herein, the trial court is directed to apply the foregoing rule and enter judgment for the appellant in accordance therewith. If either of the foregoing options is exercised the trial court is directed to dismiss the action, charging the costs to the appellees.

The trial court granted summary judgment to the Department of Transportation removing it from this action. In our opinion, dismissing the Department of Transportation from the case was premature and therefore, erroneous.

The Department of Transportation argues it had no control over the zoning and platting process and was incapable of depriving the appellant of its property and property rights.

The Department of Transportation admitted by stipulation it was involved in the planning of the K-96 Northeast Circumferential. Admitted into evidence is a contract between the Metropolitan Area Planning Commission and the Department of Transportation. It discloses the Department of Transportation was not only involved in the planning but also funded part of the planning for the highway. K.S.A. 68-401 *et seq.,* as amended, requires not only the cooperation of the Secretary of Transportation, but makes the Secretary of Transportation in most instances the controlling and determining voice in activities involving highways such as the K-96 Northeast Circumferential. The contract above mentioned is an agreement for engineering services

and gives the Department of Transportation full and exclusive authority to control the engineer in the initiation of additional phases as the contract progresses.

It was stipulated the Secretary of Transportation was the only one with authority to designate highway routes or corridors in the State of Kansas, and it was further stipulated it was the policy of the City of Wichita to consult and cooperate with the Department of Transportation and others in the matters of zoning and/or platting or issuing of building permits within the platting jurisdiction.

It was stipulated, on June 14, 1976, Robert Lakin, Director of Planning of the Metropolitan Area Planning Commission for the City of Wichita, directed a letter to Glen Koontz, Director of Engineering and Design of the Kansas Department of Transportation, relative to the preliminary plat filed which affects the appellant's property in this case. Along with the letter was a copy of the preliminary plat with the proposed right-of-way line for the K-96 freeway superimposed. The letter indicated the plat and the superimposed line was the result of information furnished the Metropolitan Area Planning Commission in February 1975 as to the location of the highway corridor. The letter was an attempt to determine if that superimposed line was the proper alignment of the highway, or if there had been a change in the proposed highway alignment in the area of the preliminary plat, and also requested any comments Mr. Koontz might have regarding the plat.

It was further stipulated, on August 24, 1976, in response to the foregoing letter, Mr. LeRoy Pitt, Road Engineer, on behalf of Glenn Anschutz, Engineer of Design for the Department of Transportation, directed a letter (attached as an exhibit) to Robert A. Lakin affirming that the alignment shown on the preliminary plat was correct and there had been no change in the proposed highway alignment. The letter concluded by stating: "We want to thank you for the opportunity *to review and comment on the preliminary plat and the continuing cooperation that exists between our two agencies.*" (Emphasis added.)

It is logical to assume the state would be in favor of the activities complained of in this litigation because of the savings to the state from any reduction in the cost of acquiring the highway corridor through the appellant's property at some time

in the future. Accordingly, we hold the Kansas Department of Transportation is a proper party defendant in this lawsuit and the lower court erred in dismissing it.

The judgment of the lower court is reversed with directions to proceed in accordance with the foregoing.

HERD, J., not participating.