64,887

TSUGIO HIJI, FRANK HIJI, AND ROBERT A. HIJI, d/b/a TFR MIN-
ERALS, O.K. JOHNSON, CLARENCE JOHNSON, GARDNER FINCH,
GENE FINCH, AND DAVID F. FINCH, *Plaintiffs*, v. THE CITY
OF GARNETT, KANSAS, AND DALE LYBARGER, CLARON G. COLE,
ADELL W. BRECHEISEN, ROBERT E. BOOTS, MICHAEL NORMAN,
AND GARRY ROMMELFANGER, as members of the Garnett City
Commission, *Defendants*.

(804 P.2d 950)

Opinion filed January 9, 1991.

*Randy P. Scheer,* of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, argued the cause, and *William H. Sanders, Sr.,* of the same firm, and *Terry J. Solander,* of Loughridge & Solander, of Garnett, were with him on the brief for plaintiffs.

*John L. Richeson,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause, and *James G. Flaherty,* of the same firm, was with him on the brief for defendants.

The opinion of the court was delivered by

HOLMES, J.: This case arises from an inverse condemnation proceeding filed in the United States District Court for the District of Kansas. Chief Judge Earl E. O'Connor has certified two questions to the Supreme Court of Kansas for resolution pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* The questions certified are:

"Is the three-year statute of limitations period, which is applicable to implied contract actions pursuant to K.S.A. 60-512, applicable to inverse condemnation actions under Kansas law? If not, what is the applicable statute of limitations?"

As this case involves certified questions of law, the facts need be stated only briefly. On June 2, 1982, the City of Garnett, Kansas, (City) passed Ordinance Number 2621 approving construction of the Cedar Creek Reservoir, a water supply reservoir.

The ordinance was then published as required by statute on June 10, 1982. The plaintiffs, Tsugio Hiji *et al.*, apparently claim an interest in all or a portion of the real estate the reservoir now occupies.

It appears no further formal action was taken by the City until May 9, 1983, when the City adopted and published another ordinance which authorized condemnation of land necessary for the reservoir. On May 21, 1983, the City filed a condemnation action in Anderson County District Court. Plaintiffs were not named as parties in the condemnation case.

From the latter part of 1982 to March 1986, the plaintiffs' attorney and the City's attorney had periodic contact and discussions concerning plaintiffs' alleged interests in the property. On June 22, 1987, plaintiffs instituted an inverse condemnation suit against the City in the United States District Court for the District of Kansas. Plaintiffs amended their complaint to include the individual members of the Garnett City Commission and to assert violations of the United States Constitution, the Kansas Constitution, and Title 42, United States Code, Section 1983 (1988).

The City filed a motion for summary judgment asserting the statute of limitations had run on plaintiffs' claims. The plaintiffs responded, denying the statute had run and alternatively asserting the City was estopped from raising the bar of the statute of limitations. On November 8, 1988, Chief Judge O'Connor granted the motion, finding the three-year statute of limitations for implied contract actions (K.S.A. 60-512) applied to inverse condemnation actions, the statute had expired in this case, and the City was not estopped from asserting the statute of limitations as a defense. The court also found that the defense of the statute of limitations was applicable to the defendant city commissioners and granted their motion to join the City's motion for summary judgment. Judgment was granted in favor of all defendants. The City and City Commissioners will be referred to jointly as the City or as defendants.

Plaintiffs appealed to the United States Court of Appeals for the Tenth Circuit, which reversed the federal district court's order granting summary judgment. The Court of Appeals found issues of material fact in plaintiffs' estoppel argument and the accrual

of plaintiffs' cause of action. The court also found that Kansas law does not provide for a three-year statute of limitations on inverse condemnation actions because no Kansas statute specifies the applicable statute of limitations and no Kansas court has decided this specific issue. On the issue of the applicable statute of limitations, the court suggested that the federal district court either certify the question to the Kansas Supreme Court or re-examine Kansas case law "in light of the constitutional right" not to have property taken by the government for public use without compensation.

On remand, the City sought certification to this court on the applicable limitation period, and the federal district court certified the questions now before the court.

In considering the questions certified by the federal court, we are not concerned with the factual determination of whether the plaintiffs actually own an interest in the real property or whether there has been an actual taking. We will assume, for the purposes of this opinion, that the plaintiffs own an interest in the real property and there has been a taking which is compensable.

In determining the applicable limitation period for inverse condemnation actions, we are confronted with several options: (1) the fifteen-year period derived from the adverse possession statute (K.S.A. 60-503); (2) the fifteen-year period for unspecified real property actions (K.S.A. 60-507); (3) no statute of limitations (K.S.A. 60-509); (4) the five-year period for actions not otherwise provided for (K.S.A. 60-511[5]); and (5) the three-year period for implied contracts (K.S.A. 60-512).

Plaintiffs, in their brief, contend that the statute of limitations should be fifteen years under either K.S.A. 60-503 or K.S.A. 60-507. In oral argument before this court, they additionally asserted as an alternative K.S.A. 60-509, which provides for no statute of limitations. The City, on the other hand, maintains that, based upon a long line of Kansas cases which categorize an action for inverse condemnation as being in the nature of an action for implied contract, the statute of limitations on implied contracts and obligations, K.S.A. 60-512(1), is the applicable statute.

Judge O'Connor agreed with the City's reasoning and held that the three-year statute applicable to implied contract actions controlled. The Circuit Court of Appeals in reversing stated, "No

Kansas statute specifies the limitation period applicable to such proceedings and . . . no Kansas court has decided this specific issue."

We will consider each of the arguably applicable statutes.

## K.S.A. 60-503

K.S.A. 60-503 reads:

"**Adverse possession.** No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

In *Ventures in Property I v. City of Wichita*, 225 Kan. 698, Syl. ¶ 3, 594 P.2d 671 (1979), inverse condemnation was defined as follows:

"Inverse condemnation is an action or eminent domain proceeding initiated by the property owner rather than the condemner. It is available when private property has been actually taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness of the taker to bring the action."

Plaintiffs advance several arguments to support their position that no period of limitation shorter than that required to establish title by adverse possession should be applied in the absence of a specific statutory limitation for inverse condemnation. The majority rule clearly supports their position. See Annot., 26 A.L.R.4th 68, 73.

According to plaintiffs, if this case was a suit involving private individuals, plaintiffs could bring an action in ejectment and have 15 years to assert their rights before being barred by adverse possession. Because a landowner must sacrifice his property rights to the government, it is not equitable to limit the landowner's right to recover damages when the government fails to comply with condemnation proceedings. Although landowners seek damages, they do so because they have no effective right to recover the property. Thus, to give effect to substance over form and in accordance with equitable principles, plaintiffs should be able to recover compensation within the 15-year period in which they could otherwise have recovered possession. Finally, plaintiffs contend there is no public need to limit the amount of time to less

than that required to establish title by adverse possession because the only effect of an inverse condemnation suit is to compel the condemner to pay compensation for property taken.

We recognize the equitable and policy arguments asserted by the plaintiffs. In an inverse condemnation action, the plaintiff property owner concedes the power and authority of the alleged condemner to acquire the property and seeks damages or compensation for the property interest taken. In doing so, the landowner elects his remedy and waives other more traditional actions such as tort or ejectment. As a practical matter, inverse condemnation may be the only actual remedy available. If the landowner were to assert an action for possession, the condemner would merely be forced to proceed with formal condemnation as it should have done initially. Thus, the alternative remedies which are theoretically available to a landowner may not in actual practice be viable at all.

The policy arguments of the plaintiffs have support in a number of cases adopting the rule plaintiffs advance. In *Aylmore v. Seattle*, 100 Wash. 515, 171 Pac. 659 (1918), the landowner brought suit to recover either the possession of land taken by the City of Seattle for a public thoroughfare or the value of the land. The City contended that plaintiffs were estopped from maintaining an ejectment action because they allowed the City to improve the property. Accordingly, plaintiffs were limited to an action for damages, which the City argued was barred by the statute of limitations on actions for trespass or the statute of limitations on actions for which no provision is otherwise made.

The Washington Supreme Court rejected the trespass statute of limitations because the City was not a trespasser or wrongdoer but had the right to take property in its sovereign capacity. The court, relying upon 2 Lewis on Eminent Domain, §§ 966, 967 (3d ed. 1909), stated:

"[T]he rule with respect to actions seeking compensation for property actually taken is stated in § 967 . . . as follows:

'We have seen that where property is entered upon and appropriated to public use without complying with the law, the owner may waive the tort and sue for his just compensation. The same rule applies where the entry is by consent and the question of compensation is left for future adjustment. In such cases the action for just compensation is not barred,

except by adverse possession for the requisite period to establish a title by prescription.'

"The reason for this distinction is perfectly obvious. A corporation possessing the right of eminent domain may acquire property for its public uses in one of three ways only: (a) by purchase; (b) by condemning and paying for the property in the manner provided by law; and (c) by adverse possession for the statutory period. If the right of the owner to recover compensation for property actually taken is barred before the expiration of the prescriptive period, this anomalous situation will result: *he will continue to be the owner of the property until he loses his title by adverse possession, yet, during the interval, he cannot exercise a single act of beneficial ownership or do any act to toll the running of the statute. He will be deprived of the use and enjoyment of property which belongs to him, both in law and in equity, while the one who has taken it without title, either legal or equitable, can exercise over it every right ordinarily incident to ownership.* We are unable to appreciate a condition where an owner is deprived of all right of enjoyment, while another, who holds no sort of title to the property, may use and deal with it as his own. Title cannot be invested where none has been divested. To hold otherwise is to sanction a custom belonging to an age long since passed which permitted one to acquire property of another merely by taking it, provided he was strong enough to retain it.

'Where the constitution either expressly, or as interpreted by the courts, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limited or be barred, is invalid. When under such a constitution property is appropriated to public use without complying therewith, the owner's right to compensation is not barred, except by adverse possession for the prescriptive period.' " 100 Wash. at 518-19. (Emphasis added.)

The court then observed that the action in ejectment was prohibited because of equitable estoppel; it would not be equitable to allow recovery of the property after it had been improved for public use at public expense. The court then continued:

"But it does not follow that he may be permanently deprived of his property without compensation, or that he shall be placed in any worse position, so far as his right to a money judgment is concerned, than he would have occupied had he not acquiesced in the improvement.

. . . .

"Upon what principle of law, justice or reason can it be said that, because one clothed with the right to condemn private property fails to exercise it and, without complying with the law, goes upon the property of another and carries out its public purposes without hindrance or interference from the owner, it should not thereafter be required to do what it should have done in the first instance—make just compensation to the owner? Why should the property holder, whose acquiescence has redounded to the ben-

efit and convenience of the taker and whose right to compensation is in lieu of his property, have any less period in which to recover the amount due him than he would have had to reclaim his property had he not thus accommodated the corporation? Why should a municipality, which has not exercised a right conferred upon it by the sovereignty in the manner defined by the author of the right, gain an additional advantage over a private owner by virtue of its own unauthorized procedure?

"Moreover, to *hold that the action for compensation is barred in two years would be to read an exception in the ten-year statute relating to the recovery of real property.* The effect of such a decision would necessarily be to permit a title to real property, for all practical purposes, to be acquired by adverse possession for the period of two years, when, in all other cases, it could only be acquired in ten years.

"We think it is too plain for serious debate that, while the owner may not, by an action of ejectment, recover the property itself where he has acquiesced in its being taken without condemnation, he may maintain an action in the nature of ejectment to obtain the substituted relief. His right of recovery is founded upon, and grows out of, his title to the land, and until such title is lost by adverse possession, he should have the right to maintain an action to recover that which represents the property itself. Any other view is to sacrifice substance to mere form." 100 Wash. at 520-23. (Emphasis added.)

See cases cited in 26 A.L.R. 4th 68, 73.

While the rationale of *Aylmore v. Seattle* and the other cases that apply the statute pertaining to adverse possession is attractive, we cannot apply K.S.A. 60-503 because of its express language. A literal reading of K.S.A. 60-503 reveals that it applies to an "action . . . for the recovery of real property" and not to an action for damages in which the landowner asserts no right to recover the property. There is no room for the application of rules of statutory construction or equitable principles when the unambiguous language of the statute applies only to actions for recovery of real property. Because an action based upon inverse condemnation does not involve the recovery of real property, K.S.A. 60-503 by its own terms precludes its application to such an action.

### K.S.A. 60-507

K.S.A. 60-507 provides:

"**Unspecified real property actions.** No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued."

This statute is broader than K.S.A. 60-503 in that it not only applies to actions for the recovery of real property but also those "for the determination of any adverse claim or interest therein." We think the arguments and rationale urged by the plaintiffs and discussed under K.S.A. 60-503 do apply to K.S.A. 60-507. While an inverse condemnation action is one for compensation for the property taken, it also requires a determination of an "adverse claim or interest" in the property. Although recognition that the condemner has acquired an interest in the property is inherent in an inverse condemnation action, the issue of the extent of the compensation or damages to the landowner is only one element of the cause of action. The landowner asserting a claim of inverse condemnation must prove not only that he owns an interest in the real property but that the alleged condemner has taken all or a part of that interest without compensating the landowner. The extent of the interest taken by the condemner is generally an issue which must be proved by the landowner. Thus the action not only involves the determination of just compensation but also a determination of the interest actually taken by the condemner. Clearly an inverse condemnation action involves the determination of an "adverse claim or interest" as contemplated by K.S.A. 60-507. Unless one of the other statutes specifically applies to inverse condemnation, we are of the opinion that K.S.A. 60-507 is the applicable statute.

### K.S.A. 60-509

K.S.A. 60-509 provides:

"**Real property actions accepted** [*sic*]. Nothing contained in any statutes of limitations shall be applicable to any real property given, granted, sequestered or appropriated to any public use, or to any lands belonging to this state."

Although the plaintiffs made no reference to K.S.A. 60-509 in their brief, they did argue at length before this court that the statute applies to this action. Defendants, in their brief, refer to the statute only indirectly and again assert that, as this is an action for money damages, K.S.A. 60-509 is not applicable as it is only relevant to actions involving interests in real property.

The annotations following K.S.A. 60-509 reveal there has been very little case law interpreting the statute and very little written

about it. Judge Gard, in his monumental work on the Code of Civil Procedure, quotes from the advisory committee notes as follows: "The purpose of this section is to eliminate any inference that the rewriting of the code provisions covering the statute of limitations affected real property claimed by the state or devoted to public use." 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-509 (1979).

The only case we have found which considers K.S.A. 60-509 in any detail is *City of Attica v. Mull Drilling Co.*, 9 Kan. App. 2d 325, 676 P.2d 769 (1984). In that case, the plaintiff City brought suit against Mull Drilling Company, Inc. (Company), contending that the Company's drilling operations caused salt-water contamination in wells the City used for its municipal water supply. The Court of Appeals characterized the suit as consisting of claims for nuisance and trespass. The issue before the court concerned the appropriate statute of limitations—the two-year period of K.S.A. 60-513(a)(4) relating to "[a]n action for injury to the rights of another, not arising in contract, and not herein enumerated" or no statute of limitations pursuant to the exemptions found in K.S.A. 60-521 and K.S.A. 60-509.

In *City of Attica*, the court first discussed the inapplicability of K.S.A. 60-521 to the facts before it and then turned its attention to K.S.A. 60-509, stating:

"The pertinent inquiry here is whether, as plaintiff maintains, K.S.A. 60-509 applies to any action which is related to property which is either owned by the state or acquired for a public use, or whether, as defendants maintain, that statute applies only to actions involving title to, interests in, or possession of such class of property. We conclude that the theory advanced by defendants has the greater merit.

"In McKay, *The Effect of the New Code on Title Examination*, 33 J.K.B.A. 173, 219-20 (1964), the author opines that the purpose of K.S.A. 60-509 was to remove public lands (and lands being put to a public purpose) from the ambit of the statutes on adverse possession, as well as all other statutes of limitation governing real property actions. In Kelly and Vratil, *Survey of Kansas Law: Statutes of Limitation*, 18 Kan. L. Rev. 441, 454 (1970), the authors state that K.S.A. 60-509 is the statute 'covering actions for recovery of real property,' and that the effect of that statute is to exempt the state 'from the statutes of limitation whether the action arose from governmental or proprietary functions,' when the action is one for the recovery of real property. And the statute has been described as merely a codification of

preexisting case law (see 33 J.K.B.A. at 219, citing *Railway Co. v. Watson*, 74 Kan. 494, 87 Pac. 687 [1906]).

"We hold that K.S.A. 60-509 pertains only to actions for the recovery of real property owned or put to use by the public, or for the establishment of interests in such property. To allow K.S.A. 60-509 to apply to all actions which in any manner concern publicly-owned or publicly-used property, no matter how nebulous, indirect or tangential the connection might be, would be extending the scope of that statute too far. Such an extension of K.S.A. 60-509 would emasculate the provisions of K.S.A. 60-521 in most, if not all, cases, for almost every action brought by a governmental entity could be characterized as one somehow connected to publicly-owned or publicly-used property. This could not have been the legislative intent in enacting K.S.A. 60-509. On the other hand, the conclusion that defendants suggest, and that we accept, gives each statute separate significance while maintaining their harmonious interaction.

"Because K.S.A. 60-509 pertains only to actions for recovery of real property, plaintiff can claim no exemption from limitations by it. This is because plaintiff's action herein in no way involved a question of rights in or to the property, but only a right to redress by way of damages for injury to an acknowledged property right. The discussion under the first issue herein, relating to what constitutes an action for recovery of real property, pertains equally to this issue." 9 Kan. App. 2d at 329-30.

Although the analysis of the Court of Appeals in *City of Attica* did not pertain to inverse condemnation, we conclude that K.S.A. 60-509, which provides for no statute of limitations in certain actions, does not apply here.

### K.S.A. 60-512

K.S.A. 60-512 provides in pertinent part: "The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing."

Chief Judge O'Connor, relying on *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 594 P.2d 671 (1979), applied K.S.A. 60-512(1) to plaintiffs' inverse condemnation action because Kansas case law has characterized inverse condemnation actions as being in the nature of a suit on implied contract. *Ventures in Property I* was a declaratory judgment action by the property owner, alleging that the City of Wichita took its land by inverse condemnation when it declined to approve platting of the property in contemplation of someday acquiring the property for highway purposes. We held:

"Inverse condemnation actions are generally in the nature of suits on implied contract. When a public entity appropriates and uses property or rights therein without compensating the owner, an implied contractual obligation arises to pay the owner reasonable value of the property or rights taken without compensation." Syl. ¶ 4.

Similar language to the effect that the nature of a suit for inverse condemnation is akin to an action on implied contract has been expressed in a long line of Kansas cases. See *Wittke v. Kusel*, 215 Kan. 403, 404-05, 524 P.2d 774 (1974); *Sanders v. State Highway Commission*, 211 Kan. 776, 780-781, 508 P.2d 981 (1973); *State Highway Commission v. Bullard*, 208 Kan. 558, 562, 493 P.2d 196 (1972); *Brock v. State Highway Commission*, 195 Kan. 361, Syl. ¶ 1, 404 P.2d 934 (1965); *Atchison v. State Highway Comm.*, 161 Kan. 661, Syl. ¶ 2, 171 P.2d 287 (1946); *State Highway Comm. v. Puskarich*, 148 Kan. 388, Syl. ¶ 1, 83 P.3d 132 (1938). The foregoing list of cases, while not all-inclusive, is representative of the numerous cases which have considered various facets of inverse condemnation actions.

This court has repeatedly referred to inverse condemnation cases as being in the nature of an action for implied contract or as being one for recovery on the theory of implied contract. The application of the theory or rationale of implied contract where one party appropriates to his own use the property of another dates at least to 1875. See *Butler v. Comm'rs of Neosho Co.*, 15 Kan. 178, 180 (1875). However, none of the myriad of Kansas cases has specifically decided the issue of what statute of limitations controls in an inverse condemnation action. The only jurisdiction which we have found that applies the implied contract statute of limitations to an inverse condemnation action is the State of Virginia. See *Prendergast v. Park Authority*, 227 Va. 190, 313 S.E.2d 399 (1984).

Although inverse condemnation actions have been described as being in the nature of implied contract actions, the right to just compensation for property taken is also a firmly grounded constitutional right. While our earlier cases primarily discuss the implied contract theory of recovery, both the Fifth Amendment to the United States Constitution and Article 12, Section 4 of the Kansas Constitution guarantee payment for private property appropriated to public use. Thus, the right to recover damages

for property taken does not rest solely upon a contract "expressed or implied but not in writing" under K.S.A. 60-512(1), but rests primarily upon a vested constitutional right. Regardless of how the cause of action is described or what theory of recovery is applied, the basic right to recover compensation for property taken for public purposes is a constitutional one. We conclude that K.S.A. 60-512 is not the applicable and controlling statute of limitations.

### K.S.A. 60-511(5)

K.S.A. 60-511 provides in pertinent part:

"**Actions limited to five years.** The following actions shall be brought within five (5) years:

. . . .

(5) An action for relief, other than the recovery of real property not provided for in this article."

As we have already determined that an inverse condemnation action requires the determination of an adverse claim or interest in the property under K.S.A. 60-507, the general statute of limitations contained in K.S.A. 60-511(5) is not applicable.

Our legislature has not adopted a statute of limitations specifically applicable to actions in inverse condemnation and until it does, we hold that K.S.A. 60-507 is the controlling statute.

We therefore answer the questions certified as follows:

1. Is the three-year statute of limitations period, which is applicable to implied contract actions pursuant to K.S.A. 60-512, applicable to inverse condemnation actions under Kansas law?

Answer: No.

2. If not, what is the applicable statute of limitations for inverse condemnation actions?

Answer: K.S.A. 60-507.